(152 App. Div. 493.)

### WATTS v. HEWLETT BAY CO. et al.

(Supreme Court, Appellate Division, Second Department. September 10, 1912.)

DAMAGES (§ 113*)—MEASURE OF DAMAGES—INJURY TO OYSTER BED.

In an action for injuries to plaintiff's oyster bed by defendant's dredging operations, the measure of plaintiff's damages, aside from the value of the oysters in existence and which were actually destroyed, was the amount the usable value of the premises had been diminished by defendant's acts, or the sum a reasonable man would be willing to pay for the

─────────

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

opportunity of making use of the property in its normal state while its use was unlawfully withheld from plaintiff.

[Ed. Note.—For other cases, see Damages, Cent. Dig. §§ 279, 280; Dec. Dig. § 113.*]

Appeal from Special Term, Nassau County.

Action by William J. Watts against the Hewlett Bay Company and another. From a judgment for plaintiff for $445.23, defendants appeal. Reversed, and new trial granted.

See, also, 146 App. Div. 913, 131 N. Y. Supp. 1149.

Argued before JENKS, P. J., and THOMAS, CARR, WOODWARD, and RICH, JJ.

Alfred T. Davison, of Brooklyn, for appellants.

George Wallace, of Jamaica, for respondent.

WOODWARD, J. The plaintiff was the licensee of the town of Hempstead, in possession of an oyster bed at Ned's Hole Bar, and the defendants are alleged to have destroyed the oysters upon this bed, estimated at 150 bushels, and to have prevented the plaintiff from realizing his profits upon the year's business, by reason of certain dredging operations. The learned court at Special Term has given judgment in favor of the plaintiff, allowing the full amount of the claim for the oysters alleged to have been destroyed, and $139.65 for the loss of profits, which it was held the plaintiff would have realized from the bed if he had planted his oysters in June (as the evidence indicated he might have done, in the exercise of reasonable judgment in reducing the losses), instead of permitting the season to go by entirely.

The court arrived at this conclusion by finding as a matter of fact that it was "the usual custom or practice of the plaintiff to plant 500 bushels of seed on this bed in the month of April of each year, and he was prevented from planting that quantity in the month of April, 1910, by the mud and sand being on his bed as heretofore described; that the same could have been planted in June of that year;" that the season of 1910 was a good one in that part of Hempstead Bay for the growing of oysters, and that the 500 bushels planted on plaintiff's bed in April would have increased to a quantity fairly estimated at 900 bushels, and if planted in June would have increased proportionately; that the impairment of the plaintiff's bed, the loss of oysters thereon, and the loss of his business for the season of 1910 were natural results of and were caused by the united acts of both defendants in relation to such dredging; that the value of 150 bushels of oysters then on the beds, less the cost of taking them up and marketing at the docks, was $150; that the value of 900 bushels of oysters, during the present season, delivered at the dock, at $1.25 per bushel, would be $1,125; that the cost of the seed delivered at the bed was 68 cents per bushel, with $8 added for spreading the same, which would for 500 bushels of seed amount to $348; that the cost of taking up and marketing 900 bushels at 20 cents per bushel would amount to $180, making a total cost of

$528; that by deducting this from $1,125, the market value of 900 bushels at the dock, the damage to the plaintiff from the loss of the season's business in 1910 is found to be $597.; but that plaintiff, by planting said lot in June, would have reduced his loss to $139.65.

It seems clear from these findings that the learned court at Special Term has attempted to compensate the plaintiff for his loss of profits upon what is practically a growing crop, in the same sense that onions grown from settings would be a growing crop, and this is not the proper measure of damages in cases of this character. All of the facts which were before the court, and which entered into the calculation as above set forth, were properly in the case as a foundation for the judgment; but the measure of damages is not the loss of profits which may be arrived at by mere speculation upon what would be the result of the planting. These facts are properly in the case for determining how has the fee, rental, or usable value of the premises been diminished by the acts of which complaint is made. Reisert v. City of New York, 174 N. Y. 196, 207, 66 N. E. 731, and authorities there cited. In other words, the measure of damages in a case of this character, aside from the oysters which were in existence and which were actually destroyed, is the usable value of the premises—is what, knowing its capacity for production and the conditions under which that production might be expected, a reasonable and prudent man would be willing to pay for the opportunity of making use of the property in its normal state, during the period of time that it is unlawfully withheld from the owner. This, we believe, is the rule laid down in the Reisert Case, supra, and the one which is controlling here.

The judgment appealed from should be reversed, and a new trial granted; costs to abide the final award of costs. All concur.