DUNLOP TIRE AND RUBBER CORPORATION, Respondent, v FMC CORPORATION, Appellant.

Fourth Department, July 2, 1976

*Hurwitz, Siegel & Hurwitz (Louis Siegel* of counsel), for appellant.

*Phillips, Lytle, Hitchcock, Blaine & Huber (Paul Zuydhoek* and *John C. Chobot* of counsel), for respondent.

SIMONS, J.   Defendant manufactures chemicals in Tonawanda, New York. On March 1, 1973 an explosion occurred in

its plant, casting stones and debris on plaintiff's tire factory nearby and also damaging it by concussion. In addition, plaintiff claims that it sustained substantial damage because the explosion destroyed towers and distribution lines owned by Niagara Mohawk Power Corporation which supplied electrical energy to its factory, thereby causing a loss of power and a 24-hour shutdown of plaintiff's production facilities. The towers and distribution lines passed in front of defendant's plant on Sawyer Avenue en route from Niagara Mohawk's generating station to serve plaintiff's plant and other customers east of plaintiff. The amended complaint includes causes of action based upon negligence, trespass, nuisance and strict liability in tort.[1] Defendant's motion to dismiss is addressed to the negligence cause of action and for purposes of this motion, we assume plaintiff's allegations to be true (see *Tobin v Grossman,* 24 NY2d 609, 612).

Special Term's order denying the motion to dismiss should be affirmed. The pleadings establish that plaintiff was within the zone of foreseeable danger from negligent acts of defendant (see *Palsgraf v Long Is. R.R. Co.,* 248 NY 339, 344). Plaintiff's property was located near defendant's property in a highly industrialized section of the town, the two separated only by railroad tracks, and the explosion (which was not the first explosion experienced by defendant in its chemical operations) occurred at a point less than 1,200 feet from plaintiff's buildings. Given the nature of defendant's business and the relationship of the two parties, it is apparent that the amended complaint states facts entitling plaintiff to recover for damage due to flying debris and concussion from the blast if a jury determines that defendant failed to exercise reasonable care considering the risk that could be anticipated (see *Levine v City of New York,* 309 NY 88, 92-93; *Caldwell v Village of Island Park,* 304 NY 268, 274).

The circumstance which makes this case unique, however, is that the damages claimed by plaintiff stem not so much from the direct invasion of plaintiff's premises as from the interruption of power caused by destruction of Niagara Mohawk's transmission lines. The amended complaint alleges that "the explosion and fire created a substantial interference with the right and ability of plaintiff to carry on the production of tires

---

1. The action arises out of the same incident as does the claim in *Beck v FMC Corp.* (53 AD2d 118) which involved a Chevrolet plant approximately one and one-half miles away from the scene of the explosion.

at its place of business". This language, amplified by the plaintiff's bill of particulars and the affidavits in opposition to defendant's motion to dismiss, requires a further explanation of our decision to affirm.

Plaintiff's claim may be conveniently divided into damages representing lost profits sustained during the 24-hour shutdown resulting from the loss of energy ($170,000) and physical damage to the property which resulted both from the blast and from the loss of energy ($16,445). It is the claim for damages sustained when the electrical power failed, principally those for lost profits (anticipated sales less cost of production and selling) to which the parties address themselves on this appeal.[2] Defendant contends that plaintiff may not maintain a cause of action to recover for negligent interference with its contract to obtain electrical power from Niagara Mohawk and that any duty imposed on defendant to prevent injury to the power lines was owed to Niagara Mohawk, the owner of the property, not plaintiff, a consumer of the electrical energy. The few cases in New York which have considered claims based upon negligent interference with contract have so held (*Ferguson v Green Is. Contr. Co.,* 36 NY2d 742, affg 44 AD2d 358 [employer suing for death of a key employee as a result of defendant's negligence]; *Rockaway Blvd. Wrecking & Lbr. Co. v Raylite Elec. Corp.,* 26 AD2d 9; see, also, *Robins Dry Dock & Repair Co. v Flint,* 275 US 303; cf *Matter of Kinsman Tr. Co.,* 388 F2d 821). There are, however, decisions in other jurisdictions permitting plaintiff to recover losses sutained as a result of defendant's negligent interruption of plaintiff's electric service (see, e.g., *Seaway Hotels Ltd. v Gragg* [1959] OR 177, 17 DLR2d 292, affd [1959] OR 581, 21 DLR2d 264; *Newlin v New England Tel. & Tel. Co.,* 316 Mass 234; contra *Byrd v English,* 117 Ga 191), and the rule against recovery has been criticized in the legal literature (see 1 Harper and James, Law of Torts, § 6.10); Prosser, Torts [4th ed], § 129; Negligent Interference with Economic Expectancy, 16 Stanford L Rev, 664; Note, 18 Cornell LQ 292). We think that rule inapplicable in the present case because plaintiff's claim is not vicarious or derivative, nor is it founded upon some unfilled contract expectancy from Niagara Mohawk acting as a conduit. Plaintiff's rights arise from an independent duty of care

---

2. The bill of particulars also includes other damages apparently attributable to the loss of electrical power, e.g., motor repairs, tires downgraded or scrapped, heating oil, etc.

owed to it by defendant.[3] It was a duty defendant owed to a known plaintiff to protect it against a predictable risk. Eliminate the duty owed to Niagara Mohawk and defendant's duty to plaintiff remained, for plaintiff was within the area of apparent danger created by any lack of care on defendant's part (Matter of Kinsman Tr. Co., 338 F2d 708; and cf Sinram v Pennsylvania RR Co., 61 F2d 767, 770).

Furthermore, defendant's duty and the foreseeability of harm to plaintiff was no less because part of the damage occurred as a result of the destruction of power lines rather than directly by concussion and flying objects, because the injury to plaintiff came from the same physical force (the explosion of stored chemicals) which required the exercise of care towards it generally (see Matter of Kinsman Tr. Co., supra, pp 723-726). Plaintiff's physical damage, losses in materials or equipment and cost of clean-up resulting from flying debris and concussion, are compensable under familiar principles of law and to the extent that similar damages were sustained and are proved, which were caused by the interruption of electrical service, they are also compensable.

There remains for consideration plaintiff's claim for lost profits. Logically, if damage from the loss of power was foreseeable, then the interruption of production was also foreseeable and the lost profits resulting from the interruption should be compensable, if proved and if, indeed, lost profits are recoverable at all in a tort action. However, while there is some limited authority that lost profits may be recovered (see Turner v Reynolds, 271 App Div 413, mot for lv to app den 296 NY 1062; New York Law of Damages, § 131-133; 13 NY Jur, Damages, §§ 62, 109;[4] contra Amodeo v Autocraft Hudson, 195 NYS2d 711, affd 12 AD2d 499; and see, also, Seaway Hotels v Gragg, supra), such damages are subject to the

3. Plaintiff has cited several out-of-State cases involving watercourses in support of its argument. The cases are distinguishable because riparian owners may have proprietary rights in the watercourse or riparian rights incident to ownership of the realty. Plaintiff does not have a similar interest in Niagara Mohawk's power distribution system. Furthermore, under the usual New York rules, the measure of damages for pollution or diversion of watercourses is the diminution in rental value of the land (see 7B Warren, Negligence, § 1.11).

4. The treatise citations rely primarily upon the general language found in Steitz v Gifford (infra) and should be read with the understanding that Steitz involved an individual plaintiff who sustained personal injury and evidence of lost profits was received to show his diminished earning capacity (see 1 NY PJI2d 651-653; 2 Harper and James, Law of Torts, § 25.3, Supp and authorities cited therein).

general rule of certainty which requires that plaintiff prove the extent of the damage and the causal relationship between defendant's negligence and the damage (see *Steitz v Gifford,* 280 NY 15, 20; *Schile v Brokhahus,* 80 NY 614, 619-620; *Pennock Co. v Ferretti,* 283 App Div 527, 534; 2 Harper and James, Law of Torts, § 25.3).

Essentially plaintiff's claim is that its profit from the production of tires during a 24-hour period is $170,000, that it was shut down 24 hours by defendant's negligence and, therefore, it is entitled to these damages. A stoppage in production, however, does not necessarily result in lost profits and the damage which a manufacturer may sustain from a 24-hour shutdown in production as a result of an interruption of electrical power may well be too remote and speculative to be compensated (see *Witherbee v Meyer,* 155 NY 446).

Plaintiff has referred us to *Newlin v New England Tel. v Tel. Co.* (316 Mass 234, *supra),* a case in which plaintiff's mushroom crop was lost when defendant negligently cut the power line which supplied the electricity regulating the room temperature. In that case the court sustained the complaint but there is no statement in its decision suggesting that the plaintiff was to be compensated beyond the value of the lost crop. Similarly in this case, plaintiff is entitled to be compensated for materials damaged or destroyed as a result of the electrical interruption. That, however, is not the same as permitting it to recover for lost profits (see *Watts v Hewlett Bay Co.,* 152 App Div 493).

There are cases in which compensation for lost profits has been permitted, primarily those involving the sale of time or services. One example is the tortious interference with a hotel owner's use of rented hotel space. The night having passed, the owner's lost profit can never be recovered (see *Turner v Reynolds, supra; Seaway Hotels v Gragg, supra;* cf *Nodine v State of New York,* 192 Misc 572, 577-578). So too, profits may be considered in some cases because they reflect the value of lost time or diminished earning capacity to an injured party or they are parasitic to personal or property injury claims (see *Steitz v Gifford,* 280 NY 15, *supra;* cf *Union Oil Co. v Oppen,* 501 F2d 558, 565-570). Undoubtedly, there are other situations which may be analyzed, but these are sufficient to illustrate the distinction between a delay in the production of tires which if not produced and sold today will be produced and sold tomorrow. The profit which might have been earned

during the period of shutdown usually will not be compensable for tort purposes because of the difficulty of demonstrating that it has been lost.

The order should be affirmed.

MARSH, P. J., MOULE, GOLDMAN and WITMER, JJ., concur.

Order unanimously affirmed, with costs.