OPINION OF THE COURT
Louis C. Benza, J.
This is a motion by the defendants for an order dismissing the claim pursuant to CPLR 3211 (a) (2), (7) on the ground that the court has no subject matter jurisdiction over the alleged cause of action and that the claim fails to state a cause of action.
This claim arises from the collapse of the Schoharie Bridge, which is part of the New York State Thruway, on April 5, *206 1987. Claimant alleges that the State and the New York State Thruway Authority (Authority) were negligent in the design, construction, maintenance, repair and inspection of the bridge. Claimant further alleges that such negligence was the proximate cause of the bridge’s collapse. It is claimant’s contention that, as a result of the defendants’ negligence, it has suffered property damage in that its trucking business has been interrupted from using its commercial routes of transportation; extra mileage costs by reason of detour of commercial route and delays; additional wear and tear on vehicles due to detours and delays; additional wages paid for extra hours worked by reason of detours and delays; lost profits by reason of the detours and delays, and other increased business expenses.
This court, by authority of section 361-b of the Public Authorities Law, has exclusive jurisdiction to hear and determine claims against the State Thruway Authority for alleged torts (Easley v New York State Thruway Auth., 1 NY2d 374). Therefore, jurisdiction in this case is established.
As the question presented is whether claimant’s claim states a cause of action, we must accept each and every allegation forwarded by the claimant without expressing any opinion as to the claimant’s ultimate ability to establish the truth of these averments before the trier of facts (219 Broadway Corp. v Alexander’s, Inc., 46 NY2d 506; Becker v Schwartz, 46 NY2d 401). If we find that claimant is entitled to a recovery upon any reasonable view of the stated facts, our judicial inquiry is complete and we must declare the claim to be legally sufficient (219 Broadway Corp. v Alexander’s, Inc., supra; Dulberg v Mock, 1 NY2d 54).
The question presented is whether the defendants can be held liable for negligently caused financial harm without accompanying physical injury or other special circumstances.
This very same issue was exhaustively reviewed in Barber Lines v M/V Donau Maru (764 F2d 50 [1st Cir 1985]). In that case, plaintiffs, shipowners and charterers, sued owners of another ship for damages sustained by fuel oil spilled into the harbor in which plaintiffs’ ship was to dock. Because of the oil spillage, plaintiffs incurred additional expenses for extra labor, fuel, transport and docking costs necessitated by having to berth at a dock other than the berth originally contemplated but not available because of defendants’ negligence in releasing oil into the harbor where the original berth was *207 located. The District Court denied recovery on the basis of the pleading, stating as authority Petitions of Kinsman Tr. Co. (388 F2d 821, 824 [2d Cir 1968] [Kinsman II]) which held that claimants’ damages were "too 'remote’ or 'indirect’ a consequence of defendants’ negligence.” The Court of Appeals, First Circuit, in Barber Lines (supra), upheld the lower court’s decision, reaffirmed the reasoning in Kinsman II (supra), and stated, "[w]e assume that the injury was foreseeable. Nonetheless controlling case law denies that a plaintiff can recover damages for negligently caused financial harm, even when foreseeable, except in special circumstances. There is present here neither the most common such special circumstance— physical injury to the plaintiffs or to their property — nor any other special feature that would permit recovery.” (Barber Lines v M/V Donau Maru, 764 F2d 50, 51 [1st Cir 1985], supra.) The exception stated in Dunlop Tire & Rubber Corp. v FMC Corp. (53 AD2d 150), a zone of danger holding, is not present here. The facts of the Kinsman II case are relevant to the discussion of the law as it relates to the case at bar. One of the defendants in Kinsman II was the City of Buffalo which was found by the court to have been negligent in failing to raise a drawbridge it maintained over the navigable waters of the Buffalo River. By failing to lift the bridge, two ships, which had broken loose from their moorings because of icy conditions on the river, collided with the bridge, demolishing it. The debris, when combined with the beached ships, caused a blockage of the river, thereby preventing further navigation of the waterway. Two shipowners filed claims for damages sustained as a result of their inability to dock their ships and discharge their cargos. Of the 2 ships, only 1 suffered some damage from the collision. Neither claim sought recovery for any physical damage incurred because of the collision, they sought only financial loss incurred because of their inability to navigate the river. The court’s original finding of negligence against the City of Buffalo and others was determined in a prior suit, Petitions of Kinsman Tr. Co. (338 F2d 708 [2d Cir 1964] [Kinsman I]). In Kinsman I, the court held that the City of Buffalo violated various statutory laws and regulations. The court stated that the statute which set the standard of care by which bridge owners must comply was established for the general purpose of insuring freedom of navigation. The claim filed in Kinsman II stated the finding of Kinsman I as the rationale for their recovery. It is apparent that the Kinsman II fact scenario creates a tort book finding of liability, a duty *208 (statutory) which was breached causing damages to claimant, which the court in Kinsman II found were foreseeable.
"When the instant case was last here, we held — although without discussion of the Cargil and Cargo Carriers claims— that it was a foreseeable consequence of the negligence of the City of Buffalo and Kinsman Transit Company that the river would be dammed * * * It would seem to follow from this that it was foreseeable that transportation on the river would be disrupted and that some would incur expenses because of the need to find alternative routes of transportation or substitutes for goods delayed by the disaster * * * It may be that the specific manner was not foreseeable in which the damages to Cargil and Cargo Carriers would be incurred but such strict foreseeability — which in practice would rarely exist except in hindsight — has not been required.” (Petitions of Kinsman Tr. Co., 388 F2d 821, 824 [2d Cir 1968], supra.) Its conclusion, therefore, was as a matter of law.
"Neither the Gillies nor the Farr[1] suffered any direct or immediate damage for which recovery is sought. The instant claims occurred only because the downed bridge made it impossible to move traffic along the river * * * Under all the circumstances of this case, we hold that the connection between the defendants’ negligence and the claimants’ damages is too tenuous and remote to permit recovery.” (Petitions of Kinsman Tr. Co., supra, at 825.)
This finding as a matter of law was reaffirmed in Barber Lines v M/V Donau Maru (764 F2d 50 [1st Cir 1985], supra), where appellant argued that Kinsman II (supra) raised a factual issue of "foreseeability”. In resolving that issue, Judge Breyer, in Barber Lines, stated: "We read Kinsman II, however, not as saying that the injury, as a matter of fact, was unforeseeable but, rather, as drawing a legal line, based on considerations of policy, cf. Sinram, supra, that forbids compensation for certain types of foreseeable, negligently caused, financial injury.” (Barber Lines v M/V Donau Maru, supra, at 52.)
Judge Breyer, after finding that claimant had a right to use the dock, and that right, as a result of defendants’ negligence, was interfered with, resulting in claimants’ damages which were foreseeable, dismissed the claim, finding that established precedent and policy forbid recoveries for negligently caused purely financial losses except under special circumstances *209 which were found not to exist under the facts of the case decided.
There are, of course, distinctions between the cited case and the one presented here. However, further analysis points out that the claimants’ foundation for recovery was much stronger in the cited case.
The claimants in Kinsman II (supra) were damaged by breach of statutory duty which set the standard of care to be followed by the City of Buffalo to insure freedom of navigation, a right long established to shipowners under the common law and the United States Constitution (Gibbons v Ogden, 22 US [9 Wheat] 1). In Barber Lines (supra) the court made a finding that claimant had a right to berth its ship at the dock cut off by defendants’ negligence, which right was legally equivalent to the contract right averred by plaintiff in Robins Dry Dock & Repair Co. v Flint (275 US 303).[2] In the instant case, the court finds no parallel right of claimant to the uninterrupted use of defendants’ highways. The claimants’ ships in Kinsman II were in the zone of danger and, in fact, one of them was struck by one of the dislodged ships. The present claim is devoid of any facts warranting a finding in favor of claimant on this point.
The facts in the present case fail to establish any foundation for a finding of any special condition which would exclude it from established precedent and policy that forbid recovery for purely financial losses. (Petitions of Kinsman Tr. Co., 388 F2d 821 [2d Cir 1968], supra;[3] Barber Lines v M/V Donau Maru, *210 764 F2d 50 [1st Cir 1985], supra.) "A good statement, applicable here, will be found” (Robins Dry Dock & Repair Co. v Flint, supra, at 309) in Barber Lines v M/V Donau Maru (supra, at 54-57), where Judge Breyer articulates the reasoning for continuing the precedent and policy upon which his decision is based, an analysis which this court adopts as being appropriate for its holding in the present case.
Although there is ample authority establishing defendants’ duty to exercise reasonable care in maintaining its highways in a condition to prevent injury to the unwary traveler, this court has not found any authority extending this duty under the circumstance presented to allow recovery for purely financial losses (Prosser and Keeton, Torts § 92, at 657; Robins Dry Dock & Repair Co. v Flint, 275 US 303, supra; Petitions of Kinsman Tr. Co., 388 F2d 821 [2d Cir 1968], supra; Barber Lines v M/V Donau Maru, 764 F2d 50 [1st Cir 1985], supra) or which would give ample reason to expand on the classes of exceptions to the general rule found in Barber Lines (supra, at 56), i.e., accompanying physical harm, intentionally caused harm, defamation, injurious falsehood, loss of consortium, medical costs of injured plaintiff paid by different family member, negligent misstatements about financial matters, master-servant, telegraph-addressee, and in Dunlop Tire & Rubber Corp. v FMC Corp. (53 AD2d 150, supra), i.e., zone of danger. These classes of exceptions have been carved by the courts from the general rule "where some strong countervailing consideration militates in favor of liability.” (Barber Lines v M/V Donau Maru, 764 F2d 50, 56 [1st Cir 1985], supra.) This court cannot see any benefits or other enhancement of public policy by imposing new duties and concomitant liabilities in expanding the classes of exceptions to include losses sustained by the present claimant. To the contrary, the economic and social burden that would be placed on defendants, for purely *211 financial losses as sustained here, would expand the orbit of duty to an uncontrollable degree and extend liability to a point totally disproportionate to the fault found. Without the application of judicial braking, the consequence of cause and effect, which has been logically and scientifically traced by Thomistic philosophers back to the prime cause of all movement, would be limited only by the metaphysical dexterity of any claimant’s counsel. However, in this pragmatic world, in fixing the bounds of duty, logic and science play no greater role than policy, whether for the purpose of limiting the legal consequence of wrongs to a controllable degree (Tobin v Grossman, 24 NY2d 609, 619) or manageable limits (White v Guarente, 43 NY2d 356; Glanzer v Shepard, 233 NY 236) or to protect against crushing exposure to liability (Pulka v Edelman, 40 NY2d 781) or even to the exclusion of some who might otherwise have recovered losses for injuries if traditional tort principles had been applied (Strauss v Belle Realty Co., 65 NY2d 399, 403). The application of the doctrine is explained in as many ways as there are cases. However, as this court sees it, one common thread is woven into the tapestry that connects the four corners of the issue and that is: "Blame as a phenomenon of conduct reflects a value judgment which in certain instances has an useful application; it is subordinate, however, to a dominant and desirable purpose of society.”[4]
In conclusion we find that claimant herein was outside the zone of danger and, therefore, tort concepts as set forth above preclude its recovery. Furthermore, the facts in this case fail to establish any foundation for a finding of any special condition which would remove it from the established precedent and policy forbidding recovery for purely financial losses in the absence of physical injury or direct property damage.
In accordance with all of the foregoing, defendants’ motion to dismiss for failure to state a cause of action is granted and it is ordered that claim No. 75312 be dismissed and the same is dismissed.

 Names of ships owned by claimants Cargil and Cargo Carriers.

. In Robins Dry Dock & Repair Co. v Flint (275 US 303, 309), Justice Holmes held that "as a general rule, at least, a tort to the person or property of one man does not make the tortfeasor liable to another merely because the injured person was under a contract with that other, unknown to the doer of the wrong.”

. In Kinsman II (Petitions of Kinsman Tr. Co., 388 F2d 821) the court, in footnote 5, at 824, discussed another claim, not before them on appeal, arising from the same facts and which was dismissed by the lower court, and in footnote 8, at 825, a hypothetical case to explain its finding. The case in footnote 5 was brought by the Buffalo Transit Company for its expenses in rerouting its buses until a new bridge became available, on the ground that its damage occurred only through negligent interference with its right as a user. The lower court found that the defendant did not know the claimant had a right to use the bridge. Judge Kaufman, however, stated, "It would certainly not stretch the concept of foreseeability as it is developed in the cases to hold that it is 'reasonably foreseeable’ that buses use major bridges.” It is apparent, although not authoritative, from the placement of the footnote in that portion of the decision which set the parameters for inclusion of events although foreseeable fall within the purview of his *210 holding that such damages are not recoverable. This was further emphasized by the hypothetical case cited in footnote 8 which was adopted and discussed by Judge Breyer in his decision in Barber Lines v M/V Donau Maru (764 F2d 50, 52) which analogized the careening ship to a negligent driver who crashes into another car in the Brooklyn Battery Tunnel. Responsibility for the direct losses resulting from his negligence would be imputed ''[b]ut we doubt that damages would be recoverable against the negligent driver in favor of truckers or contract carriers who suffered provable losses because of the delay or to the wage earner who was forced to 'clock in’ an hour late. And yet it was surely foreseeable that among the many who would be delayed would be truckers and wage earners.”

. A notation from The Formation of Rules: A Preliminary Theory of Decision (35 Brooklyn L Rev 165, 186 [1969]), an article by the Honorable James D. Hopkins, Associate Justice, Appellate Division, Second Department.