■ MILLIKEN & Co. et al., Appellants-Respondents, v CITY OF NEW YORK et al., Respondents-Appellants, et al., Defendant. (And a Third-Party Action.) GOLD MILLS, INC., Appellant-Respondent, v CITY OF NEW YORK et al., Respondents-Appellants, et al., Defendant. (And a Third-Party Action.) I.S.K. MANHATTAN, INC., et al., Appellants, v CITY OF NEW YORK et al., Respondents. (And Third- and Fourth-Party Actions.) [619 NYS2d 714] —Upon the Court's own motion the Decision and Order of this Court entered on December 9, 1993 (199 AD2d 75) are hereby recalled and vacated and the following Decision and Order substituted therefor as follows:

Orders, Supreme Court, New York County (Karla Moskowitz, J.), entered on or about March 6, 1991, as resettled in orders entered September 2, 1992, modified on the law, to the extent of reinstating against defendant Con Edison the claims (including for loss of profits) of those plaintiffs which were dismissed for lack of privity with the utility, and dismissing the claims against the real estate defendants, and otherwise affirmed, without costs.

On August 10, 1983 an underground water main ruptured near the intersection of 38th Street and Seventh Avenue, flooding the subbasement of the Navarre Building, where Con Edison maintained a substation. As a consequence of the flood and a resultant fire, electrical power was lost to most of Manhattan's garment center (30th to 42nd Streets, between Avenue of the Americas and Seventh Avenue) for the next four days. Aside from the normal inconvenience and disruption caused by an extended power outage, this happened to be the fashion industry's semiannual Buyers Week in New York. Various allegations of negligence and contractual liability were asserted by numerous plaintiffs against Con Edison, the City of New York, various real estate entities connected with the Navarre Building, and Empire City Subway Company,

which had excavated and installed certain underground conduits and communication lines in the area for defendant New York Telephone Company.

On March 6, 1991, in orders resettled eighteen months later, the IAS Court ruled, as pertinent on these consolidated appeals, that Con Edison should be liable only to its direct subscribers (*i.e.,* those metered for service by the utility) who can show that they sustained actual property damage. To the contrary, we hold that Con Edison's zone of duty encompasses those tenants who can prove a relationship with the utility by having assumed an obligation in their leases to reimburse the landlord for electrical power on an apportioned basis, despite a lack of direct metering.

The IAS Court dismissed the claims by those plaintiffs who were tenants without a direct customer relationship with Con Edison, citing *Strauss v Belle Realty Co.* (65 NY2d 399). In *Strauss,* the Court dismissed a complaint against Con Edison by an elderly tenant who had tripped and fallen in a darkened common area of his apartment building during the power blackout of 1977. While such an injury might very well have been foreseeable under the circumstances, the Court held, on public policy grounds, that the extension of Con Edison's liability to nonsubscribers (*i.e.,* individuals having no contractual relationship with the utility) would unduly enlarge the zone of duty, notwithstanding Con Edison's established negligence in connection with the blackout.

"Duty in negligence cases is defined neither by foreseeability of injury * * * nor by privity of contract. * * *

"But while the absence of privity does not foreclose recognition of a duty, it is still the responsibility of courts, in fixing the orbit of duty, 'to limit the legal consequences of wrongs to a controllable degree' " (*supra,* at 402).

Without employment of public policy, the Court suggested that the zone of duty might very well be expanded beyond controllable limits to include such categories as the guests and invitees of a tenant or the walk-in customers or occupants of an office building. It is "the court's responsibility to define an orbit of duty that places controllable limits on liability" (*supra,* at 405).

In so holding, the Court allowed that certain identifiable entities which were not direct customers of Con Edison might nevertheless be entitled to recover against the utility, citing *Koch v Consolidated Edison Co.* (62 NY2d 548, *cert denied* 469 US 1210). The plaintiffs in the consolidated actions before us

fall into that category of identifiable and more or less permanent establishments in the area that might reasonably be recognized as reliant upon Con Edison's services for their commercial existence, as opposed to the more transient mass of potential plaintiffs who were the subject of the Court's caution in *Strauss*. It is their identifiable and definable nature that preserves these tenants' standing within the orbit of duty owed by Con Edison. Furthermore, the nature of these claims is contractual liability, which is much more in keeping with the concept of the orbit of duty than would be a personal injury claim *(cf., Hernandez v Consolidated Edison Co.,* 65 NY2d 857).

The IAS Court dismissed claims based upon loss of profits on the ground that physical damage was the *sine qua non* of economic recovery. We have held that where economic loss results from business interruption, "speculative lost profits, lost revenues or lost labor productivity" are not recoverable *(Grow Tunneling Corp. v Consolidated Edison Co.,* 157 AD2d 452). But this is not to say that a given situation might not arise where the proof of such lost profits could very well be certain and specific enough to warrant recovery in damages *(Koch v Consolidated Edison Co.,* 62 NY2d, *supra,* at 562, n 9; *cf., Dunlop Tire & Rubber Corp. v FMC Corp.,* 53 AD2d 150, 154-156).

In order to make out such a claim, plaintiffs must establish more than a mere interruption of the business cycle. There must be proof that the damages suffered were peculiar to these particular plaintiffs, as opposed to injury generally affecting the community at large *(Burns Jackson Miller Summit & Spitzer v Lindner,* 59 NY2d 314), and it must be demonstrated that the profits lost during Buyers Week were such that could not be made up subsequently *(Kirsch Beverage Corp. v Consolidated Edison Co.,* 130 AD2d 718). While these are heavy burdens to be borne by plaintiffs *(cf., Grow Tunneling Corp. v Consolidated Edison Co.,* 195 AD2d 325), they should not preclude an opportunity for plaintiffs to prove same at trial.

Finally, the real estate defendants neither owned nor maintained any of the instrumentalities at the Navarre Building which might have ruptured the water main, nor did they have authority over Con Edison's use or maintenance of the substation facilities in the building. In helping Con Edison bail out the subbasement and summoning the City for emergency assistance, these defendants performed a purely palliative role. There is no indication that their volunteerism contrib-

uted in any way to the explosion that shut the power down. Whatever special duty they undertook was discharged reasonably, without any demonstrated lack of care. The claims against these parties should have been dismissed. Concur—Carro, J. P., Ellerin, Wallach and Rubin, JJ.

Rosenberger, J., dissents in a memorandum as follows: The dismissal of the claims against Consolidated Edison by those plaintiffs who were not its customers should be affirmed. It is clear that Consolidated Edison owes no duty to non-customers for damages allegedly resulting from a massive power failure *(Strauss v Belle Realty Co.,* 65 NY2d 399; *see also, Moch Co. v Rensselaer Water Co.,* 247 NY 160; *Beck v FMC Corp.,* 42 NY2d 1027, *affg* 53 AD2d 118). The Court of Appeals has fixed the orbit of duty in these circumstances " 'to limit the legal consequences of wrongs to a controllable degree' * * * and to protect against crushing exposure to liability" *(Strauss v Belle Realty Co., supra,* at 402, quoting *Tobin v Grossman,* 24 NY2d 609, 619 [other citations omitted]).

The majority states that tenants, not having a relationship with Consolidated Edison, have "assumed an obligation in their leases to reimburse the landlord for electrical power on an apportioned basis". There is nothing in this record to show that such "apportioned" "reimbursement" took place. In fact, in the normal practice, a landlord purchases electrical service from Consolidated Edison, which service is then resold to the tenant, at a profit *(see, Sage Realty Corp. v O'Cleireacain,* 185 AD2d 188, *lv dismissed* 80 NY2d 1024).

These non-customer plaintiffs, who purchased their electricity from their landlords, were not members of a specific, limited, circumscribed class with a close relationship with Consolidated Edison. Thus they are not to be distinguished from others excluded from recovery on public policy grounds.

The grant of summary judgment to the "real estate defendants" is also unwarranted. Issues of fact are present in several particulars regarding their actions. It is also to be noted that, in some instances, these defendants were the vendors of electrical services to plaintiffs.