Marcellus Energy Servs. LLC v Tompkins Ins. Agencies, Inc. (2025 NY Slip Op 02980)

Marcellus Energy Servs. LLC v Tompkins Ins. Agencies, Inc.

2025 NY Slip Op 02980

Decided on May 15, 2025

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:May 15, 2025

CV-24-0353
[*1]Marcellus Energy Services LLC, Respondent-Appellant,
v
Tompkins Insurance Agencies, Inc., Appellant-Respondent.

Calendar Date:March 27, 2025

Before:Garry, P.J., Egan Jr., Reynolds Fitzgerald, McShan and Mackey, JJ.

Feldman Kieffer, LLP, Buffalo (Adam C. Ferrandino of counsel), for appellant-respondent.
Levene Gouldin & Thompson, LLP, Vestal (John L. Perticone of counsel), for respondent-appellant.

McShan, J.
Cross-appeals from an order of the Supreme Court (Oliver Blaise III, J.), entered January 25, 2024 in Tioga County, which denied plaintiff's motion for partial summary judgment, and denied defendant's motion for summary judgment dismissing the complaint.
Plaintiff is a company, located in the Town of Candor, Tioga County, that, among other things, supplies truck drivers to operate vehicles owned or leased by Schlumberger Technology Corporation, a multistate oil and gas drilling business. In 2014, plaintiff procured an insurance policy from defendant for their business. Plaintiff maintained a policy with defendant through 2019, when one of plaintiff's employees caused serious physical damage to a Schlumberger vehicle. However, defendant's physical damage coverage did not extend to that incident and, as a result, plaintiff paid for the damages out of pocket. Thereafter, plaintiff commenced this action, alleging that defendant, among other things, was negligent in advising plaintiff with respect to the availability of insurance coverage for the business relationship between plaintiff and Schlumberger; namely, coverage for Schlumberger's vehicles that were operated by plaintiff's employees. Following joinder of issue, defendant moved for summary judgment dismissing the complaint and, alternatively, contended that plaintiff's claim for lost profits was barred. Plaintiff then cross-moved for partial summary judgment on the issue of liability. Supreme Court denied both motions, determining, in sum and substance, that triable issues of fact existed regarding whether a special relationship existed between the parties and whether the coverage advice provided by defendant was accurate. These cross-appeals ensued.
"The insurance agent-insured relationship is not a generally recognized professional relationship in which continuing obligations to advise might exist but, rather, is an ordinary commercial relationship which does not usually give rise to a duty to provide such ongoing guidance. Thus, an insurance agent's duty to its customer is generally defined by the nature of the customer's request for coverage" (M & E Mfg. Co. v Frank H. Reis, Inc., 258 AD2d 9, 11 [3d Dept 1999] [citation omitted]; see Wied v New York Cent. Mut. Fire Ins. Co., 208 AD2d 1132, 1133 [3d Dept 1994]). To that end, the general obligation for an insurance agent encompasses "a common-law duty to provide requested coverage within a reasonable time and [such agent] may be held liable for negligence or breach of contract when a client establishes that a specific request was made for coverage that was not provided in the policy" (Finch v Steve Cardell Agency, 136 AD3d 1198, 1200 [3d Dept 2016]; see American Bldg. Supply Corp. v Petrocelli Group, Inc., 19 NY3d 730, 735 [2012]). "[A]lthough it is well established . . . that a broker may be held liable, based upon either breach of contract or tort, for neglect in failing to procure insurance, in order to support such a recovery[,] it must [*2]be demonstrated that the coverage sought could have been procured prior to the [insurable event]" (Rodriguez v Investors Ins. Co. of Am., 201 AD2d 355, 356 [1st Dept 1994]; see Transamerica Ins. Fin. Corp. v Iron Eagle Contr. Corp., 262 AD2d 303, 304 [2d Dept 1999]; Gorgone v Regency Agency, 238 AD2d 265, 266 [1st Dept 1997]; American Motorists Ins. Co. v Salvatore, 102 AD2d 342, 346 [1st Dept 1984]).
Additionally, "[e]ven in the absence of a specific request, an insurance broker may be liable for failing to advise or direct the client to obtain additional coverage where a special relationship has developed between the broker and the client" (Hefty v Paul Seymour Ins. Agency, 163 AD3d 1376, 1378 [3d Dept 2018]; see John Mezzalingua Assoc., LLC v Travelers Indem. Co., 211 AD3d 1553, 1555 [4th Dept 2022]). The existence of a special relationship, however, is "the exception, not the norm," and, through that lens, we look to three recognized situations that give rise to such a relationship; specifically, when "(1) the agent receives compensation for consultation apart from payment of the premiums; (2) there was some interaction regarding a question of coverage, with the insured relying on the expertise of the agent; or (3) there is a course of dealing over an extended period of time which would have put objectively reasonable insurance agents on notice that their advice was being sought and specially relied on" (Voss v Netherlands Ins. Co., 22 NY3d 728, 735, 736 [2014] [internal quotation marks and citations omitted]; accord Hefty v Paul Seymour Ins. Agency, 163 AD3d at 1378). "[T]he issue of whether such additional responsibilities should be recognized and given legal effect is governed by the particular relationship between the parties and is best determined on a case-by-case basis" (Murphy v Kuhn, 90 NY2d 266, 272 [1997]).
Gloria Tubbs, plaintiff's founder and owner, testified at her deposition that she had initially approached defendant about procuring insurance for her business in 2013 after she became dissatisfied with her prior provider. According to Tubbs, she explained to defendant's agent, Eric Toftegaard, that she required coverage for her business arrangement with Schlumberger and, after accepting Toftegaard's recommendations for insurance coverage, procured an insurance policy from defendant in 2014. More specifically, Tubbs testified that she had explained the nature of her business to Toftegaard, which consisted of outsourcing plaintiff's employees to drive other companies' vehicles, and that she was seeking coverage that, as relevant here, would extend to Schlumberger's vehicles when operated by plaintiff's employees.
In 2015, one of plaintiff's drivers caused physical damage to a Schlumberger vehicle precipitating a claim for damages with defendant by Schlumberger. According to Tubbs, Toftegaard did not advise her that she did not have coverage for hired drivers until that incident, when defendant rejected the claim for coverage. In [*3]a letter from Toftegaard, defendant advised plaintiff that, pursuant to the contract with Schlumberger, defendant was not required to provide physical damage coverage for vehicles they do not own. Tubbs testified that she inquired with Toftegaard about coverage for plaintiff's arrangement with Schlumberger at that time and was advised that plaintiff would have to list every one of Schlumberger's vehicles under the policy. Ultimately, Tubbs did not seek out a different agency at that time because she believed Toftegaard's representation to her that coverage for plaintiff's business arrangement with Schlumberger did not exist; specifically, per her testimony, "[h]e was the professional. I ran [plaintiff]. He was an insurance person." Plaintiff ended up paying for the damage to Schlumberger's vehicle from the 2015 incident out of pocket.
Plaintiff thereafter continued to pay and annually renew its insurance policies with defendant, but, according to Tubbs, during her annual meetings with Toftegaard she continued inquiring about the availability of physical damage coverage for Schlumberger's vehicles operated by plaintiff's employees. On that inquiry, Tubbs testified that Toftegaard advised her that "there was no such thing," and "that two people could not insure the same vehicle." Meanwhile, in 2016, at the request of plaintiff, defendant was able to provide physical damage coverage for a rental truck that plaintiff briefly acquired from Penske Truck Leasing Co. for training purposes. Specifically, defendant provided plaintiff with a "Hired Vehicle Coverage" endorsement that covered physical damage to the rental truck, which was incorporated in the 2016-2017 policy period, and renewed for 2017-2018. However, that policy was not renewed because, according to Tubbs' son, Toftegaard advised that it was inapplicable to the arrangement plaintiff had to operate Schlumberger's vehicles. In 2019, one of plaintiff's employees was again involved in an accident in a Schlumberger vehicle that caused significant damage. A Schlumberger representative subsequently informed Tubbs that plaintiff needed to get physical damage coverage for Schlumberger's vehicles or risk losing Schlumberger's business. That representative also testified that she had spoken with Toftegaard after the 2019 accident, who had advised that plaintiff did not have coverage for the business arrangement with Schlumberger and "[t]hat nobody would cover that." Despite that response, the representative advised Toftegaard that other companies provided the same services for Schlumberger as plaintiff and were in fact able to procure the necessary coverage.
During his deposition, Toftegaard acknowledged that Tubbs had inquired about coverage for the Schlumberger arrangement on numerous occasions. Conversely, however, Toftegaard testified that he did not advise Tubbs that the hired driver coverage for the Schlumberger business arrangement did not exist; rather, according to Toftegaard, he merely advised [*4]that defendant could not procure it for plaintiff. In response to Tubbs providing a list of carriers that did provide the requested coverage, Toftegaard indicated that the availability of such coverage was dependent on various factors, including access to carriers and "access . . . at that spot[,] versus New York[,] versus other states." Following the 2019 accident, Toftegaard was able to acquire the hired driver coverage after a wholesale broker that defendant worked with to procure coverage from "surplus lines companies" was purchased by a larger broker, providing greater access to different coverages. Defendant later paid out a claim in 2021 for damages caused by plaintiff's employee to a Schlumberger vehicle.
"The question whether negligence on the part of an insurance agent or broker proximately caused a client's losses should generally be resolved by the factfinder" (Finch v Steve Cardell Agency, 136 AD3d at 1202 [internal quotation marks and citation omitted]). That principle is apt under these circumstances, as we find that there are issues of material fact precluding summary judgment. As it pertains to the existence of a special relationship, there is no suggestion by either party that there was any compensation paid to defendant beyond insurance premiums. Accordingly, we examine the record to determine whether plaintiff relied on the expertise of defendant's agent or whether there was a course of dealing between the two such that defendant reasonably should have been aware that its advice was being sought and relied upon (see Voss v Netherlands Ins. Co., 22 NY3d at 736). The resolution of these questions distills to whether defendant advised that the coverage sought by plaintiff for the Schlumberger business arrangement did not exist, and whether plaintiff relied on that representation, or whether the coverage was simply unavailable from defendant. The testimony of Tubbs and Toftegaard diverge significantly on this issue. Further, although defendant focuses on whether the hired driver coverage was necessary in light of the contract between plaintiff and Schlumberger, along with the fact that plaintiff continued providing services without the coverage for a period of time, the alleged relationship in this case is predicated on plaintiff's allegation that she made numerous inquiries to defendant about obtaining the hired driver coverage, Toftegaard's alleged response and Tubbs' reliance on Toftegaard's expertise (compare Nicotera v Allstate Ins. Co.,147 AD3d 1474, 1477 [4th Dept 2017], lv denied 29 NY3d 907 [2017]). Thus, we find that Supreme Court properly determined that the resolution of liability with respect to the existence of a special relationship is dependent on credibility determinations and, accordingly, denied the parties' respective motions for summary judgment (see Voss v Netherlands Ins. Co., 22 NY3d at 735; AB Oil Servs., Ltd. v TCE Ins. Servs., Inc., 188 AD3d 624, 629 [2d Dept 2020]; Finch v Steve Cardell Agency, 136 AD3d [*5]at 1202; McColgan v Brewer, 75 AD3d 876, 878 [3d Dept 2010]; compare Hefty v Paul Seymore Ins. Agency, 163 AD3d at 1378-1379; Petri Baking Prods., Inc. v Hatch Leonard Naples, Inc.,151 AD3d 1902, 1904 [4th Dept 2017]).
Further, plaintiff raises a contention that it should have been granted summary judgment on liability with respect to the Hired Vehicle Endorsement procured in 2018-2019 for the rental truck and its applicability to the business arrangement between plaintiff and Schlumberger. We disagree. To begin, although Supreme Court determined to the contrary, plaintiff's theory of liability on this issue necessarily implicates whether defendant breached its common-law duty to provide plaintiff with the specifically requested coverage encompassing its relationship with Schlumberger by advising that the coverage was "unavailable" (see Reilly v Progressive Ins. Co., 288 AD2d 365, 366 [2d Dept 2001]; Transamerica Ins. Fin. Corp. v Iron Eagle Contr. Corp., 262 AD2d at 304; see also American Bldg. Supply Corp. v Petrocelli Group, Inc., 19 NY3d at 735; Mott v New York Prop. Ins. Underwriting Assn., 209 AD2d 981, 981 [4th Dept 1994]; compare Voss v Netherlands Ins. Co., 22 NY3d at 734; JKT Constr., Inc. v United States Liab. Ins. Group, 39 AD3d 594, 595 [2d Dept 2007]; Hjemdahl-Monsen v Faulkner, 204 AD2d 516, 517 [2d Dept 1994]). However, contrary to plaintiff's argument, the record does not conclusively establish that the 2018-2019 endorsement would have covered plaintiff's business relationship with Schlumberger. To that end, although plaintiff contends that the language in the endorsements for 2016-2017 — the year that plaintiff rented the Penske truck — is analogous to the language in the endorsement in 2020-2021 — the year when defendant provided a policy that covered a claim for damages to a Schlumberger vehicle operated by plaintiff's employee — there is also testimony from defendant's representative that the endorsement only applied to rental agreements. Plaintiff posits that the lease arrangements required by federal law for each Schlumberger transaction are fairly characterized as such. However, we find that the evidence contained in the record is insufficient to substantiate that representation or to conclude that the Hired Vehicle coverage was applicable to the plaintiff/Schlumberger relationship as a matter of law (see American Bldg. Supply Corp. v Petrocelli Group, Inc., 19 NY3d at 735-736; compare Cromer v Rosenzweig Ins. Agency Inc., 156 AD3d 1192, 1195 [3d Dept 2017]). To the extent that defendant suggests that it is entitled to summary judgment on this issue, that argument is first raised in its reply brief and at oral argument, rendering it unpreserved (see Ruberti v Butler, 227 AD3d 1169, 1172 n 2 [3d Dept 2024]). In any event, were we to address the argument, we would find it lacking in merit for the aforementioned reasons.
Finally, we note that Supreme Court did not directly address defendant's alternative argument relative to [*6]entitlement of damages for lost profits and other fees. Defendant's contention that lost profits are not recoverable in tort is mistaken. "[U]nder modern practice, the right to recover profits claimed to have been lost as a result of a tort or of a breach of contract is determined by the same rules as govern the recovery of other damages" (36 NY Jur 2d Damages § 104; see Levine v American Fed. Group, 180 AD2d 575, 577 [1st Dept 1992]; 36 NY Jur 2d Damages § 105; see generally IKB Intl., S.A. v Wells Fargo Bank, N.A., 40 NY3d 277, 290 [2023]). The loss of profits, as alleged by plaintiff, resulted from defendant's failure to procure the coverage at issue, as that precipitated the conflict between Schlumberger and plaintiff over reimbursement for the damages to Schlumberger's vehicle. To that end, Toftegaard acknowledged having spoken with Tubbs before plaintiff initially agreed to procure coverage from defendant in 2014 about the fact that plaintiff stood to lose business from Schlumberger if it did not maintain the appropriate coverage for the business arrangement between plaintiff and Schlumberger. In connection with that discussion, the aforementioned representative from Schlumberger testified that she had a discussion with Tubbs after the 2019 accident and advised that the unresolved claims for property damage, and an inability to procure the appropriate insurance coverage, would affect the amount of business that Schlumberger did with plaintiff. Accordingly, on the record before us, and viewing the evidence in the light most favorable to plaintiff, we agree that there is a triable issue of fact relative to whether its lost profits were the natural and probable consequence of defendant's failure to properly advise as to the existence of coverage for plaintiff's business arrangement with Schlumberger (see Levine v American Fed. Group, 180 AD2d at 577; Wolf St. Supermarkets v McPartland, 108 AD2d 25, 33 [4th Dept 1985]; see generally Dunlop Tire & Rubber Corp. v FMC Corp., 53 AD2d 150, 155 [4th Dept 1976]). In light of our determination that there are triable issues stemming from the foregoing record facts, we need not address the parties' remaining contentions.
Garry, P.J., Egan Jr., Reynolds Fitzgerald and Mackey, JJ., concur.
ORDERED that the order is affirmed, without costs.