[711 NYS2d 391]

## 532 MADISON AVENUE GOURMET FOODS, INC., Appellant, v FINLANDIA CENTER, INC., et al., Respondents.

First Department, July 6, 2000

**APPEARANCES OF COUNSEL**

*Steven Sarshik* of counsel (*Eisenberg & Margolis*, attorneys), for appellant.

*Harry Steinberg* of counsel (*Abraham S. Altheim* on the brief; *Newman Fitch Altheim Myers, P. C.,* attorneys), for respondents.

## OPINION OF THE COURT

MAZZARELLI, J. P.

This is an appeal from an order granting defendants' motion to dismiss the complaint for failure to state a cause of action. The central issue is whether it is possible for plaintiff to prevail on causes of action for public nuisance and for negligence where it has suffered economic loss, but no personal or property damage. We answer this question in the affirmative.

When considering a motion to dismiss pursuant to CPLR 3211, the trial court must "accept the facts as alleged in the complaint as true, accord plaintiff[ ] the benefit of every possible favorable inference, and determine only whether the facts as alleged fit within any cognizable legal theory" (*Leon v Martinez,* 84 NY2d 83, 87-88). Reviewing the complaint in this action with that standard in mind, and combining its allegations with the undisputed facts, we conclude that plaintiff has made out prima facie claims of public nuisance and negligence, and we reinstate those causes of action.

On December 7, 1997, a section of the south wall of 540 Madison Avenue, a high-rise office building on the west side of Madison Avenue at 55th Street, collapsed and fell onto the avenue. As a consequence, City officials directed that Madison Avenue from 42nd Street to 57th Street and certain side streets be closed to vehicular and pedestrian traffic. This closure lasted for approximately two weeks. Stores and other businesses in close proximity to 540 Madison were closed for an even longer period. The extended closure resulted, in part, because after the occurrence, the building owners were unsure whether to dismantle the building's entire south wall, or engage in more limited repair. Plaintiff, 532 Madison Avenue Gourmet Foods, Inc., operates a store one-half block south of 540 Madison. While it did not suffer property damage, plaintiff's store was forced to close for five weeks. The building, 540 Madison, is owned by defendant Finlandia Center, Inc. Defendant 540 Acquisition Co., L. L. C. holds the ground lease, which it purchased for $35 million in August 1996, and defendant Manhattan Pacific Management Co., Inc. manages the building.

Plaintiff has asserted two causes of action. The first sounds in negligence. It alleges that defendants' failure to properly

inspect the building at the time of purchase and during a later renovation project constituted negligence, because a reasonable investigation would have revealed that the building could not sustain the extensive construction and renovation undertaken. The second is based upon a theory of public nuisance. Plaintiff is seeking $450,000 for loss of business income, $100,000 on the public nuisance claim for its inconvenience, and $500,000 on each claim for punitive damages.

In opposition to defendants' motion to dismiss the complaint, plaintiff's counsel affirmed that contemporaneous with the building's construction, problems with its brickwork developed. Counsel states that in 1973 an action was brought against the former owner of the ground lease, who admitted, in response to an interrogatory in that action, that certain subcontractors had not properly bound the bricks to the south and west walls of the building.[1] The former owners of the ground lease also stated that repair work had been attempted, but not completed in 1973, and that the walls kept "deteriorating, collapsing, cracking and spalling." They also opined that *"[t]he entire south * * * exterior wall[ ] of the building shall have to be dismantled and rebuilt due to the defects"* mentioned above (emphasis supplied). Plaintiff argues that this information was available to the present owners of the ground lease, and to defendant Finlandia, which was the owner of the building throughout the 1973 litigation.

In further opposition to the present defense motion, plaintiff states that despite the building's history of major structural problems, and additional evidence that vertical cracks and flaking brickwork were still a problem at 540 Madison in 1987,[2] defendant made extensive alterations in May 1997. This included punching more than 90 window holes into the south

---

**1.** In a companion class action, *5th Ave. Chocolatiere et al., on Behalf of Themselves and Others Similarly Situated v 540 Acquisition Co. et al.,* plaintiff provided certain documents, including the response to interrogatories from the 1973 action. Those documents admit that one subcontractor had failed to insert and bolt the relieving angles (lintels) in the south brick wall, and that another had failed to provide the required dovetail anchors, brick ties, and 3/8" expansion joints which are required to bind the brick to the building. This Court may take judicial notice of court documents (*Reed v Wolff,* 242 AD2d 375), which also reveal that the company which contracted to provide labor and materials to perform the masonry work on the building admitted to spalling (chipping, crumbling or flaking) on the south exterior wall of the building.

**2.** In the companion case, counsel provided a 1987 inspection report, which found, as relevant, open and deteriorated mortar joints on the southeast corner, from the 6th to the 15th floors.

side of the building, which was already unstable, and which was designed to be windowless. In addition to the creation of windows, construction to increase retail space on the first two floors of the building was performed. Plaintiff alleges that this created considerable vibration, ultimately causing the December 7, 1997 incident when bricks, mortar and other objects came loose from the south wall and fell into the street. Plaintiff also asserts that defendants were negligent for failing to conduct periodic inspections and for not reporting safety problems to the Buildings Department as required by the Administrative Code of the City of New York.

Plaintiff's complaint was dismissed pursuant to CPLR 3211 (a) (7), for failure to state a cause of action. The IAS Court dismissed the public nuisance claim on the ground that plaintiff suffered the same injury as all merchants in the community. It also found the negligence claim insufficient because: (1) the building owner did not owe plaintiff a duty of care; (2) the connection between the alleged negligence and the claimant's damages was too tenuous to permit recovery; and (3) the facts did not present the type of special circumstances warranting an exception to the "economic loss rule."

With respect to the negligence claim, landowners and business proprietors have a duty to maintain their properties in a reasonably safe condition (*Kush v City of Buffalo*, 59 NY2d 26; *Basso v Miller*, 40 NY2d 233). Analyzing the scope of this duty, courts look to "whether the relationship of the parties is such as to give rise to a duty of care * * * whether the plaintiff was within the zone of foreseeable harm * * * and whether the accident was within the reasonably foreseeable risks" (*Di Ponzio v Riordan*, 89 NY2d 578, 583 [citations omitted]; *see also*, *Strauss v Belle Realty Co.*, 65 NY2d 399 [utility company's duty does not extend to noncustomers]). This includes the duty to prevent foreseeable injury to neighboring property, here a store located one-half block away from a collapsed wall (*see*, *Gayden v City of Rochester*, 148 AD2d 975).

Courts in this jurisdiction have generally adhered to the principle, commonly referred to as the "economic loss rule," that pure economic losses (without property damage or personal injury) are not recoverable in a negligence action, and that a claimant suffering purely financial losses is restricted to an action in contract for the benefit of its bargain (*Robins Dry Dock & Repair Co. v Flint*, 275 US 303; *Strauss v Belle Realty Co.*, *supra*; *Schiavone Constr. Co. v Elgood Mayo Corp.*, 56 NY2d 667). However, New York courts have also recognized

exceptions to this overly formalistic approach, permitting negligence actions, primarily in situations where there has been some minor damage to property or personal injury (*see, Syracuse Cablesystems v Niagara Mohawk Power Corp.*, 173 AD2d 138 [4th Dept 1991] [Court allowed recovery of lost profits and related business expenses in negligence action where explosion of a transformer in defendant's building caused incidental property damage, i.e., PCB contamination to plaintiff's nearby office, which was closed for almost a month]; *Dunlop Tire & Rubber Corp. v FMC Corp.*, 53 AD2d 150 [4th Dept 1976] [Court allowed recovery for incidental property damages and economic losses caused by explosion in a chemical plant, noting the proximity of plaintiff's property to the defendant's, the fact that the area was highly industrialized, and that the explosion, which was not the first, occurred less than 1,200 feet from plaintiff's buildings]). Moreover, at least one Federal decision applying New York law has recognized an exception to the traditional rule in a case involving pure financial loss (*see, Petitions of Kinsman Tr. Co.*, 388 F2d 821, 824 [2d Cir 1968] [while the court found that damages were unforeseeable, it explicitly rejected the traditional "economic loss rule" applying general negligence principles]; *cf., Bristol-Myers Squibb v Delta Star*, 206 AD2d 177 [4th Dept 1994] [denying negligence claim for pure economic losses where the alleged breach was contractual]).

A deviation from the "economic loss rule" is appropriate on the facts of this case because of defendants' alleged knowledge and reckless disregard of the risk of creating approximately 90 new windows throughout the south wall of a skyscraper, and conducting other renovation to the base of this building, which already had major pre-existing structural defects. Under such alleged scenario, defendants should have anticipated that those pre-existing problems would negatively affect the planned renovation, and could foreseeably result in injury to others. That the injuries were not catastrophic to the thousands of people who generally frequent this area was fortuitous, because the collapse took place on a Sunday, shortly after noon.

Allowing the negligence cause of action here to proceed properly allocates the risk of loss and the costs of engaging in dangerous activities such as defendants are alleged to have done. Holding defendants liable for their tortious acts creates an incentive for others not to follow suit but to act reasonably with regard for the safety of others (*see*, Note, *Purely Economic Loss: A Standard for Recovery*, 73 Iowa L Rev 1181 [1988];

Note, *Tortfeasor Liability for Disaster Response Costs: Accounting for the True Cost of Accidents*, 55 Fordham L Rev 1001, 1006 [1987]; *People Express Airlines v Consolidated Rail Corp.*, 100 NJ 246, 255, 263, 495 A2d 107, 111, 116).

The dissent discusses the role of policy in determining the orbit of the defendants' duty to the surrounding community, without mention of the flagrant disregard these defendants allegedly evinced by punching 90 window holes into the wall of a skyscraper which had two decades of stability problems and was designed to be windowless. However, a bright line rule denying recovery to every plaintiff who might have suffered severe financial losses as a result of defendants' conduct but fortuitously did not suffer personal injury or property damage frustrates the equally important policy objectives of dissuading future gross negligence. This is especially true where, as alleged here, defendants should have been aware that construction in crowded urban areas poses a significantly higher risk of harm to the surrounding community.

In this case of alleged egregious negligence, denying recovery simply because there was no incidental property damage to plaintiff's store would foreclose redress based upon a meaningless technicality. "While it may be undesirable to place an overwhelming economic burden on a negligent defendant, it is worse, given the compensatory goal of tort law, to levy such a burden on an unsuspecting plaintiff" (Note, *op. cit.*, 73 Iowa L Rev, at 1207). We reject the dissent's conclusion that a neighboring plaintiff who does not suffer injury or property damage is not entitled to legal protection against the willful, grossly irresponsible behavior of defendants who cause the collapse of a wall of a skyscraper.

Our sister jurisdiction of New Jersey has applied the same reasoning in *People Express*, a case with analogous facts, which we find persuasive here.[3] In *People Express*, the defendant's alleged negligence caused a dangerous chemical to escape from a

---

**3.** Although *People Express (supra)* is a New Jersey case, it has been cited by at least one recent Federal court in New York to demonstrate the relaxation of standards for recovery of financial losses in tort cases (*see, Blue Cross & Blue Shield v Philip Morris, Inc.*, 36 F Supp 2d 560, 583 [ED NY 1999] ["The trend in modern tort law generally has been to reject the rigid and formalistic barriers which once prohibited third parties from recovering for 'indirect' injuries."]). Moreover, other States have either approvingly cited *People Express*, or independently reached the identical conclusion that economic losses are recoverable in the absence of either personal injury or property damage (*see e.g., Mattingly v Sheldon Jackson Coll.*, 743 P2d 356 [Alaska]; *J'Aire Corp. v Gregory*, 24 Cal 3d 799, 598 P2d 60; *Heimbrock Co. v*

railway tank car, resulting in an evacuation of the surrounding area. The plaintiff, a commercial airline, sued for damages it incurred as a result of being forced to evacuate its premises and interrupt its business operations. Declining to adopt the "economic loss rule," the New Jersey court applied a modification of general tort principles[4] to sustain a negligence cause of action where the plaintiff suffered only economic losses, without property damage. Among the facts which persuaded the court to allow the case to proceed to a jury trial were the close proximity of the airline to the freight yard, and the defendant's actual and constructive knowledge of the volatile property of the chemical it was working with. In response to concerns of unlimited liability, the court in *People Express* advocated "thorough consideration and searching analysis of underlying policies to determine whether a particular defendant may be liable for a plaintiff's economic losses" (*supra,* 100 NJ, at 255, 495 A2d, at 111; *see also, Syracuse Cablesystems v Niagara Mohawk Power Corp.,* 173 AD2d 138, *supra; Dunlop Tire & Rubber Corp. v FMC Corp.,* 53 AD2d 150, *supra*).

Here, as in *People Express, Syracuse,* and *Dunlop,* defendants should be held responsible for the foreseeable economic consequences of their negligence with respect to plaintiff's store, an entity at a fixed location 100 feet from the collapsed wall on the south side of 540 Madison Avenue. Plaintiff had a reasonable expectation that the parties responsible for a building 100 feet from its store would use diligence and care in examining the wall prior to commencing extensive alterations, especially where they were undertaking a massive project, including punching over 90 windows into a wall which was not only constructed to be windowless, but which also had major recurring structural defects. Further, plaintiff had the right to expect that if engineers found problems with the brickwork, adequate safety nets would be installed to prevent bricks from

---

*Marine Sales & Serv.,* 766 SW2d 70 [Ky Ct App]; *Comet Delta v Pate Stevedore Co.,* 521 So 2d 857 [Miss]; *Champion Well Serv. v NL Indus.,* 769 P2d 382 [Wyo]).

4. The court specifically held that "a defendant owes a duty of care to take reasonable measures to avoid the risk of causing economic damages, aside from physical injury, to particular plaintiffs or plaintiffs comprising an identifiable class with respect to whom defendant knows or has reason to know are likely to suffer such damages from its conduct. * * * *An identifiable class of plaintiffs must be particularly foreseeable in terms of the type of persons or entities comprising the class, the certainty or predictability of their presence, the approximate numbers of those in the class, as well as the type of economic expectations disrupted*" (*supra,* 100 NJ, at 263-264, 495 A2d, at 116 [emphasis supplied]).

falling from the skyscraper to the street. Given the information available at this prediscovery phase of the litigation, including the former owner's admission that the wall was so defective that it needed to be rebuilt, there is a showing that defendants should have been aware that there might be problems with the creation of such a vast number of windows, and the removal of a major portion of the supporting brickface, namely, the possibility that this wall would collapse and injure others (*compare, Di Ponzio v Riordan,* 89 NY2d 578, *supra*). Further, since discovery has not yet been completed, supplemental facts supporting plaintiff's negligence claim may still be revealed. It is for a jury to determine whether plaintiff's damages from a five-week closing of its store were a foreseeable consequence of defendant's negligence; we would therefore reinstate plaintiff's negligence claim.

We agree with the analysis of the public nuisance claim in Justice Ellerin's opinion in the companion case of *5th Ave. Chocolatiere v 540 Acquisition Co.* (272 AD2d 23 [decided herewith]), as applied to the individual plaintiff in this case. Thus, we reinstate the public nuisance cause of action here.

Accordingly, the order, Supreme Court, New York County (Sheila Abdus-Salaam, J.), entered October 14, 1998, which, pursuant to CPLR 3211 (a) (7), dismissed plaintiff's complaint alleging negligence and public nuisance, should be reversed, on the law, without costs, the motion denied and the complaint reinstated.

ANDRIAS, J. (dissenting). We dissent for the same reasons stated in our dissent in *5th Ave. Chocolatiere v 540 Acquisition Co.* (272 AD2d 23, 33 [decided herewith]).

ELLERIN and RUBIN, JJ., concur with MAZZARELLI, J. P.; ANDRIAS and BUCKLEY, JJ., dissent in a separate opinion by ANDRIAS, J.

Order, Supreme Court, New York County, entered October 14, 1998, reversed, on the law, without costs, defendants' motion pursuant to CPLR 3211 (a) (7) to dismiss the complaint denied and the complaint reinstated.