**HYDRO INVESTORS, INC., Plaintiff–Counter–Defendant–Appellant,**

Lawrence Taft, Plaintiff–Counter–Defendant,

v.

**TRAFALGAR POWER INC.,** Marina Development, Inc., and Arthur Steckler, Defendants–Counter–Claimants–Appellees.

Trafalgar Power Inc., Plaintiff–Appellee–Cross–Appellant,

v.

Neal Dunlevy and Stetson–Harza Corp., Defendants–Appellants–Cross–Appellees.

**Nos. 99–9198(L), 99–9206(XAP), 99–9202(CON), 99–9204(CON).**

United States Court of Appeals, Second Circuit.

Argued: June 23, 2000

Decided: Sept. 15, 2000

David Rabinowitz Moses & Singer LLP, New York, NY (Roger L. Waldman, Moses & Singer LLP, New York, NY, on the brief) for Plaintiff–Counter–Defendant–Appellant.

Carolyn Elefant, Law Offices of Carolyn Elefant, Bethesda, MD, for Defendant–Appellant–Cross–Appellee Neal Dunlevy.

John Glover Roberts, Jr. Hogan & Hartson L.L.P., Washington, DC (Catherine E. Stetson, Hogan & Hartson, Washington, DC; Richard E. Alexander, Harter, Secrest & Emery, Rochester, NY, on the brief) for Defendant–Appellant–Cross–Appellee Stetson–Harza Corp.

Paul J. Yesawich, III, Harris Beach & Wilcox, LLP, Rochester, NY (Laura W. Smalley, Rochester, NY, on the brief) for Defendants–Counter–Claimants–Appellees and Plaintiff–Appellee–Cross–Appellant.

Before: MINER and STRAUB, Circuit Judges, and TRAGER, District Judge.*

MINER, Circuit Judge:

This case consists of consolidated actions by various individuals and entities involved in the development, construction, and/or operation of six hydroelectric plants located in upstate New York. The attempted development of these sites has resulted in financial disaster, extensive litigation before the district court, and the appeal before us.

Plaintiff-counter-defendant-appellant Hydro–Investors, Inc. ("HII") appeals from an order denying its post-trial motion for an accounting and the imposition of a constructive trust. Defendant-appellant-cross-appellee Neal Dunlevy ("Dunlevy") and defendant-appellant-cross-appellee Stetson–Harza ("Stetson–Harza") appeal from a judgment, following a jury verdict, imposing joint and several liability on them in the amount of $7.6 million for damages stemming from their professional malpractice with regard to the hydroelectric plants at Ogdensburg and Forestport. Dunlevy and Stetson–Harza also appeal from the district court's denial of their post-trial motions for a new trial and/or for judgment as a matter of law.

* The Honorable David G. Trager, of the United States District Court for the Eastern District of New York, sitting by designation.

Defendants-counter-claimants-appellees Trafalgar Power, Inc., Marina Development, Inc. ("Marina Development"), and Arthur Steckler ("Steckler") (collectively "TPI") cross-appeal from (1) a pre-trial order dismissing their negligent misrepresentation claim with respect to the Adams and Kayuta Lake sites; (2) orders entered at trial dismissing their professional malpractice claims with respect to Adams and Kayuta Lake; (3) orders entered at trial dismissing breach of contract claims with respect to the Adams, Kayuta Lake, Forestport, and Ogdensburg sites; and (4) a post-trial order dismissing their motion to amend the judgment to include an award of prejudgment interest.

For the reasons that follow, we affirm in part and vacate in part the judgment and orders of the district court and remand for additional proceedings consistent with this opinion.

## BACKGROUND

Stetson–Harza is an engineering firm based in Utica, New York. At certain times pertinent to this appeal, Dunlevy, an engineer, worked at Stetson–Harza. Dunlevy also served as the principal and sole shareholder of HII. In the 1980s, Dunlevy met Steckler, a Canadian businessman who was the sole owner of Marina Development. Steckler also controlled TPI, a wholly owned subsidiary of Marina Development.

In 1984, Dunlevy suggested to Steckler that hydroelectric plants in upstate New York could be profitably developed. Dunlevy also suggested that Steckler provide the capital to develop the plants and that Dunlevy, via HII or Stetson–Harza, would contribute hydroelectric expertise. Steckler apparently believed these projects would be a good financial opportunity because oil prices were nearing an all-time high and Congress had passed legislation favoring alternative energy. As a result of their discussions, Dunlevy and Steckler decided to enter the hydroelectric power plant business together. Consequently, TPI eventually retained Stetson–Harza

and HII to perform work associated with TPI's licensing and possible development of six hydroelectric plants in upstate New York: Herkimer, Cranberry Lake, Kayuta Lake, Adams, Forestport, and Ogdensburg.

On August 1, 1985, Steckler (via TPI) and Dunlevy (via HII) entered into an agreement that called for TPI to provide the capital while HII would identify the sites to be developed. The specific sites were not identified in the agreement. The agreement did contain attached schedules that conditioned HII's participation in each project on a number of factors, including construction within the budget and meeting the expected energy output. Despite the existence of this agreement, Dunlevy's activities for TPI were not limited to his work through HII. Indeed, the liability asserted against Dunlevy in this action stems from his role as chief engineer of the Water Resources Department at Stetson–Harza.

As part of TPI's effort to obtain financing for the projects, Steckler asked Stetson–Harza to prepare an analysis that could be used by potential lenders to evaluate whether to invest in the projects. That analysis, dated October 27, 1986, included an assessment of the energy to be generated by each project as well as the costs of construction.

By November 1986, TPI was fully committed to the project, having decided to develop six projects at an anticipated cost of approximately $23 million. Pursuant to this commitment, TPI had purchased multi-million dollar turbines for the Ogdensburg, Forestport, Adams, and Kayuta Lake sites. It also had located a lender that was willing to make an equity contribution of nearly $7.5 million and had launched the Federal Energy Regulatory Commission ("FERC") licensing approval process.

The plants were constructed in 1987 and have proven to be financial disasters. At the time of this appeal, TPI has not re-

ceived any profits from the plants. No equity has been returned to the investors and no cash distributions have taken place. Apparently, the losses are only likely to increase in the future as legislation favoring alternative power sources expires. The primary problems associated with the development of these plants are construction cost overruns and inadequate energy production.

As a result of claimed deficiencies arising out of the financial difficulties associated with these projects, HII asserted claims in 1989 for breach of contract against TPI, seeking specific performance, an accounting, and the imposition of a constructive trust. TPI in turn sued Stetson–Harza, Dunlevy, and HII alleging breach of contract, gross negligence, negligence and/or professional malpractice, gross misrepresentation, intentional misrepresentation, negligent misrepresentation, and fraud. Plaintiff-counter-defendant Lawrence Taft ("Taft") also sued TPI, seeking (1) specific enforcement of an alleged agreement providing that TPI transfer an ownership right in the Adams, Kayuta Lake, and Forestport sites back to Taft; (2) an accounting; (3) the imposition of a constructive trust; and (4) damages for TPI's and Steckler's alleged fraud. Taft's claims were later settled out of court. By pretrial order, the United States District Court for the Northern District of New York (Kahn, *J.*) granted summary judgment to Stetson–Harza, Dunlevy, and HII on the fraud, negligent misrepresentation, and gross negligence claims asserted by TPI. The rest of the case proceeded to a jury trial that consumed approximately 10 days in March and April 1999.

The evidence at trial, taken in the light most favorable to the prevailing party, revealed that although Dunlevy held himself and Stetson–Harza out as experts in hydroelectric engineering both had little experience with such projects. The evidence showed that Dunlevy's primary expertise was in computer applications and that Dunlevy acted primarily as a salesman;

recent college graduates performed most of the engineering analysis. TPI's evidence also indicated that, even under the best conditions, the energy output estimates provided by Stetson–Harza and Dunlevy were overly optimistic. The disparity between the estimated and actual output largely resulted from Stetson–Harza and Dunlevy improperly calculating Ogdensburg's head (the drop in height of water, from the reservoir down to the tailrace at the plant's powerhouse) and misapprehending the actual FERC bypass flow requirements for Forestport.

After TPI presented its case, the United States District Court for the Northern District of New York (Hurd, *J.*) entered judgment as a matter of law dismissing (1) TPI's claims for breach of contract and professional malpractice based on the Adams and Kayuta Lake sites and (2) the breach of contract claims with regard to Forestport and Ogdensburg. The rest of the claims proceeded to a jury verdict. The jury found (1) TPI not liable for breach of contract with regard to the Ogdensburg, Herkimer, Cranberry Lake, Kayuta Lake, Adams, and Forestport plants and (2) Stetson–Harza and Dunlevy jointly and severally liable in the amount of $7.6 million for damages stemming from their engineering malpractice in connection with the licensing and/or development of the Ogdensburg and Forestport plants. After trial, the district court (Hurd, *J.*) denied (1) HII's motion to set aside the verdict, for judgment as a matter of law, and for a new trial based on the jury's allegedly inconsistent verdicts; (2) Stetson–Harza's motion for judgment as a matter of law or for a new trial on the ground that TPI failed to adequately prove professional malpractice and the damages arising therefrom; and (3) TPI's motion to amend the judgment to include prejudgment interest pursuant to N.Y. C.P.L.R. § 5001(a).

This appeal followed.

## DISCUSSION

Stetson–Harza presents the following arguments on appeal: (1) the judgment against it should be reversed because TPI failed to prove proximate cause; (2) TPI was not entitled to lost revenues from an energy output prediction "that was impossible to achieve under real-world conditions"; (3) the economic loss rule precludes TPI from recovering for lost revenues on the negligence claim; and (4) Stetson–Harza is entitled to a new trial because "the plaintiff's flawed damages theory infected the entire case."

HII argues: (1) that the dismissal of its claim for an accounting must be reversed because the lower court failed to make findings of fact and conclusions of law pursuant to Fed.R.Civ.P. 52 and the evidence presented supported an accounting; (2) that the dismissal of HII's equitable claims for a constructive trust must be reversed because the court failed to make findings of fact and conclusions of law; and (3) that the jury verdict with respect to HII's breach of contract claim should be reversed because of the admission of allegedly highly prejudicial evidence concerning Dunlevy's conflict of interest.

Dunlevy contends that there is insufficient proof of professional malpractice liability to support the judgment below. Dunlevy also makes a number of arguments addressed to the question of damages. He argues that (1) TPI is not entitled to *any* damages because of New York's economic loss rule for tort actions; (2) the cost of repairing the power plants provides the appropriate measure of damages; (3) calculating damages based on differences in "gross profits" is an error of law; and (4) even accepting TPI's method of measuring damages, the jury verdict is clearly erroneous. Dunlevy further asserts that (1) the conflict of interest evidence presented by TPI was irrelevant, highly prejudicial, inflammatory, and confusing and (2) if he is held to have committed malpractice as a manager versus as an engineer, then he is protected from liability by an exculpatory clause.

TPI replies to these various attacks on the judgment below with several arguments of its own in support of the judgment and then cross-appeals on several issues. In reply to the appellants' arguments, TPI contends that (1) there was overwhelming evidence that Dunlevy and Stetson–Harza were negligent and that Dunlevy's negligence proximately caused TPI's damages; (2) the damages award accurately represents the actual damages that were foreseeable; (3) the economic loss rule does not prelude recovery for lost profits; (4) the jury's verdict was supported by the evidence and accordingly a new trial is not appropriate; and (5) the district court correctly dismissed HII's claim for an accounting and the imposition of a constructive trust. In the cross-appeal, TPI argues that the district court erred (1) in not granting TPI's request for prejudgment interest on the negligence claim; (2) by dismissing, prior to trial, the negligent misrepresentation claim relating to Adams and Kayuta Lake; (3) by dismissing, at trial, TPI's breach of contract and professional malpractice claims relating to Adams and Kayuta Lake for insufficient evidence; and (4) by dismissing, at trial, TPI's breach of contract claims for the Forestport and Ogdensburg sites.

## I. The Professional Malpractice Liability of Stetson–Harza and Dunlevy with Respect to the Ogdensburg and Forestport sites

Stetson–Harza and Dunlevy both contend that the jury's special verdict findings of liability for engineering malpractice in connection with the licensing or development of the Ogdensburg and Forestport plants are unsustainable. Consequently, they urge us to find that the district court erred in denying their post-trial motion for judgment as a matter of law or for a new trial pursuant to Rules 50 and 59 of the Federal Rules of Civil Procedure.

█ Our review of the denial of a Rule 50 motion is *de novo*. *See Martinelli v. Bridgeport Roman Catholic Diocesan Corp.*, 196 F.3d 409, 425 (2d Cir.1999). "We ... will reverse the denial of judgment as a matter of law 'only if, notwithstanding making all credibility assessments and drawing all inferences in favor of [TPI], a reasonable juror would be compelled to accept the view of [Stetson–Harza and Dunlevy].'" *Gordon v. Matthew Bender & Co.*, 186 F.3d 183, 184 (2d Cir. 1999) (quoting *EEOC v. Ethan Allen, Inc.*, 44 F.3d 116, 119 (2d Cir.1994)); *see also Weissman v. Dawn Joy Fashions, Inc.*, 214 F.3d 224, 227 (2d Cir.2000). We review the denial of the parties' Rule 59 motion for a new trial for abuse of discretion. *See Metromedia Co. v. Fugazy*, 983 F.2d 350, 363 (2d Cir.1992).

█ Under New York law, "professional malpractice[ ] is a species of negligence. As such, its general elements are (1) negligence, (2) which is the proximate cause of (3) damages." *Marks Polarized Corp. v. Solinger & Gordon*, 124 Misc.2d 266, 476 N.Y.S.2d 743, 744 (1984). Stetson–Harza's appeal is based on its contention that TPI failed to prove that the alleged acts of malpractice were the proximate cause of its injury, since "negligent measurements of the flow and head at Forestport and Ogdensburg did not *cause* those plants to generate less energy." Stetson–Harza's Br. at 24. Stetson–Harza asserts that it was "[t]he low head of the river, the surrounding terrain, and (with respect to Forestport) FERC's decision to require 140[cfs] of bypass flow [that] caused the lower energy output— and thus [TPI]'s lower revenues." *Id.*

█ We reject this reasoning as specious. It was not merely the failure of the plants, based on their physical characteristics, to generate the desired amount of energy that caused TPI's damage. The legal cause of TPI's injury was Dunlevy's failure to adequately convey the realities of Ogdensburg and Forestport with a level of professional care that would have al-lowed TPI to make its business decisions with respect to those sites based on reasonably reliable technical information. The physical traits of the sites only served to provide the conditions precedent to the malpractice committed by Dunlevy. A proximate cause determination does not require a jury to identify the liable party as the sole cause of harm; it only asks that the identified cause be a substantial factor in bringing about the injury. *See AUSA Life Ins. Co. v. Ernst & Young*, 206 F.3d 202, 215 (2d Cir.2000); *Fane v. Zimmer, Inc.*, 927 F.2d 124, 128 (2d Cir.1991); *Voss v. Black & Decker Mfg. Co.*, 59 N.Y.2d 102, 107, 463 N.Y.S.2d 398, 450 N.E.2d 204 (1983). Once the jury was convinced that the minimal standard of professional care was not met in this case, the proximate cause of TPI's injury could easily be construed to be the carelessness of Dunlevy, and, through the doctrine of *respondeat superior*, his employer Stetson–Harza.

Dunlevy's appeal advances a number of arguments with respect to the findings of malpractice liability. Upon an examination of these arguments, we find that while these arguments may have had merit before a jury, we are constrained to accept the jury's resolution of these factual issues.

We further note that Dunlevy's contention that he should be relieved of liability due to certain negligent acts by the plaintiffs—*e.g.*, Steckler's decision to purchase large turbines despite Dunlevy's November 1986 suggestion that smaller turbines might be purchased in anticipation of lower flows, or TPI's decision not to excavate the tailrace at Ogdensburg—is adequately accounted for by the jury's special verdict apportioning 20% of the liability to the plaintiffs in comparative fault and in the consequent *pro rata* reduction of the plaintiffs' damages award.

## II. The Economic Loss Rule

█ Stetson–Harza and Dunlevy contend that the district court improperly per-

mitted TPI to obtain a damage award based on "lost revenues" in violation of the economic loss rule found in New York cases. They posit that even if the evidence supported a finding of professional malpractice, the damages awarded below reflect the quintessential expectation damages found in breach of contract actions as opposed to the compensatory awards customarily found in tort actions. In response, TPI contends that the appellants waived this argument by failing to raise it before the trial court and that TPI's professional malpractice claim falls within the narrow category of claims exempt from the New York economic loss restriction.

We begin by addressing TPI's argument that Stetson–Harza and Dunlevy waived this issue by failing to raise it below. While the appellants may very well have waived this contention by failing to raise it below, *see Commander Oil Corp. v. Barlo Equip. Corp.,* 215 F.3d 321, 332 (2d Cir. 2000) ("Commander Oil argues that it is entitled to contractual indemnification from Barlo.... However, Commander Oil failed to raise the issue below in a timely manner and it is therefore waived for purposes of this appeal."); *Austin–Westshore Constr. Co. v. Federated Dep't Stores, Inc.,* 934 F.2d 1217, 1222–23 (11th Cir.1991), we find it unnecessary to resolve the argument here because, even assuming *arguendo* that they may raise the argument here, we find no merit in it.

■ The economic loss rule was adopted by the New York Court of Appeals in *Schiavone Construction Co. v. Elgood Mayo Corp.,* 56 N.Y.2d 667, 668–69, 451 N.Y.S.2d 720, 436 N.E.2d 1322 (1982), *rev'g on dissent below,* 81 A.D.2d 221, 227–234, 439 N.Y.S.2d 933 (1981) (Silverman, *J.,* dissenting). *See 5th Ave. Chocolatiere, Ltd. v. 540 Acquisition Co.,* 712 N.Y.S.2d 8, 11 (N.Y.App.Div.2000). The rule developed as a way of enforcing the dictates of privity in product liability law and preventing tort remedies from eliminating the customary limitations involved in cases addressing the sale of goods. *See id.* at 11–

12. "[T]he majority of cases enunciating the economic loss rule [have] arise[n] in the context of product liability, where the economic losses are essentially contractual in nature, and therefore the risk may be allocated by the parties, as reflected in the purchase price, UCC warranties or insurance...." *Id.* at 11; *See also Saratoga Fishing Co. v. J.M. Martinac & Co.,* 520 U.S. 875, 885, 117 S.Ct. 1783, 138 L.Ed.2d 76 (1997) ("In *East River S.S. Corp. v. Transamerica Delaval Inc.,* 476 U.S. 858, 106 S.Ct. 2295, 90 L.Ed.2d 865 (1986), we adopted as part of admiralty law the so-called 'economic loss' rule, which denies the purchaser of a defective product a tort action against the seller or manufacturer for purely economic losses sustained as a result of the product's failure.") (Scalia and Thomas, *JJ.,* dissenting) (parallel citation omitted).

■ Although the doctrine survives in today's caselaw despite the increasing relaxation of privity rules, it is not always applied in negligence cases. *See 5th Ave. Chocolatiere,* 712 N.Y.S.2d at 12. Primarily, its continuing role is based on the recognition that "[r]elying solely on foreseeability to define the extent of liability [in cases involving economic loss], while generally effective, could result in some instances in liability so great that, as a matter of policy, courts would be reluctant to impose it." *Id.* at 12. To prevent such open-ended liability, courts have applied the economic loss rule to prevent the recovery of damages that are inappropriate because they actually lie in the nature of breach of contract as opposed to tort. *See 532 Madison Ave. Gourmet Foods, Inc. v. Finlandia Ctr., Inc.,* 271 A.D.2d 49, 711 N.Y.S.2d 391, 393 (2000) ("[P]ure economic losses (without property damage or personal injury) are not recoverable in a negligence action, and ... a claimant suffering purely financial losses is restricted to an action in contract for the benefit of its bargain."). The difficulty in our case is determining where to draw the line: TPI contends that the professional malpractice

of Stetson–Harza and Dunlevy requires the damages awarded below, and the appellants argue that these damages are an improper award of expectation damages truly stemming from breach of contract.

In *Sommer v. Federal Signal Corp.*, 79 N.Y.2d 540, 548, 583 N.Y.S.2d 957, 593 N.E.2d 1365 (1992), the New York Court of Appeals considered whether the economic loss rule applied in an action against a fire alarm company for negligent services resulting in extensive property damage. The fire alarm company's employee erred in shutting off the fire alarm system at a 42–story skyscraper in New York City. Seven to nine minutes after the alarm was shut off, the fire alarm company started receiving fire signals from the skyscraper. However, the technician on duty at the fire alarm company ignored the calls. A four-alarm fire was eventually reported directly to the authorities, but all of the parties acknowledged that the alarm company could have alerted the authorities minutes earlier. The fire resulted in millions in damages and led to a spate of lawsuits. *See id.* at 548–49, 583 N.Y.S.2d 957, 593 N.E.2d 1365.

The Court of Appeals began its discussion by analyzing whether the company owning the skyscraper could pursue a tort claim against the fire alarm company, or whether the skyscraper's owner was limited to breach of contract remedies. Explaining its difficulty in resolving the case, the New York Court of Appeals recalled the following statement from one of its prior cases:

> Between actions plainly *ex contractu* and those as clearly *ex delicto* there exists what has been termed a borderland, where the lines of distinction are shadowy and obscure, and the tort and the contract so approach each other, and become so nearly coincident as to make their practical separation somewhat difficult.

*Id.* at 550–51, 583 N.Y.S.2d 957, 593 N.E.2d 1365 (quoting *Rich v. New York Cent. & Hudson River R.R. Co.*, 87 N.Y. 382, 390 (1882)).

After discussing the various ways in which a claim may be contractual or tort-like, the court concluded that the claims of the skyscraper owner were not limited to breach of contract theories, but could also sound in tort. *See id.* at 552, 583 N.Y.S.2d 957, 593 N.E.2d 1365. It looked to several factors: (1) that the fire alarm company's duty of care derived not only from contract but from the nature of its services; (2) that the fire alarm stations are franchised and regulated by the City; (3) that the fire alarm company served a significant public interest; (4) that the breach of the fire alarm company's duties could have catastrophic consequences; (5) the nature of the fire alarm company's relationship with the skyscraper owner; and (6) the sudden manner of the loss. *See id.* at 552–53, 583 N.Y.S.2d 957, 593 N.E.2d 1365.

The record in the present case does not call for us to apply the economic loss rule to bar TPI's damages. The circumstances here indicate that TPI's professional malpractice claim is one sounding in tort and not a contractual dispute disguised as a tort. Although the parties may have entered into contracts governing some aspects of their relationship, the damages awarded below were for a harm distinct from those contracts, a harm arising out of the failure of Dunlevy and Stetson–Harza to provide proper estimates of energy output, adequately gauge the impact of government regulations, and more generally provide appropriate services. *See 17 Vista Fee Assocs. v. Teachers Ins. & Annuity Assoc. of Am.*, 259 A.D.2d 75, 83, 693 N.Y.S.2d 554 (N.Y.App.Div.1999) ("[I]n claims against professionals, '[a] legal duty independent of contractual obligations may be imposed by law as an incident to the parties' relationship. Professionals . . . may be subject to tort liability for failure to exercise reasonable care, irrespective of their contractual duties.' ") (quoting *Sommer*, 79 N.Y.2d at 551, 583 N.Y.S.2d 957, 593 N.E.2d 1365) (first alteration added;

second alteration in original); *Robinson Redevelopment Co. v. Anderson,* 155 A.D.2d 755, 757, 547 N.Y.S.2d 458 (N.Y.App.Div.1989) ("We conclude that the contractual and professional relationship of plaintiff and defendants gave rise to two distinct wrongs, one contractual and the other grounded in professional malpractice, recoverable at law."); *Commerce & Industry Ins. Co. v. Vulcraft, Inc.,* No. 97 Civ. 2578, 1998 WL 823055, at *12 (S.D.N.Y. Nov.20, 1998) (rejecting the application of the economic loss rule and stating that "[t]he premise for the third-party claim ... is in substance one for professional malpractice, and that obligation is distinct from any contract into which the parties may have entered").

While we recognize that some cases have applied the economic loss rule to bar recovery where the only loss claimed is economic in nature, *see County of Suffolk v. Long Island Lighting Co.,* 728 F.2d 52, 62 (2d Cir.1984), and still others have applied that rule to professional malpractice cases, *see Joseph v. David M. Schwarz/Architectural Servs., P.C.,* 957 F.Supp. 1334, 1339–40 (S.D.N.Y.1997), the better course is to recognize that the rule allows such recovery in the limited class of cases involving liability for the violation of a professional duty. To hold otherwise would in effect bar recovery in many types of malpractice actions. *See 17 Vista Fee Assocs.,* 259 A.D.2d at 83, 693 N.Y.S.2d 554 ("[T]he fact that 17 Vista suffered pecuniary losses only is of no significance in this malpractice claim against a professional. Many types of malpractice actions, such as those against an accountant or attorney, will frequently result in economic loss only.") (internal citations omitted); *Robinson Redevelopment Co.,* 155 A.D.2d at 757, 547 N.Y.S.2d 458 (stating that because "[m]ost malpractice claims against professionals 'regularly arise out of a contractual relationship and involve injury to property or pecuniary interests only,'" strict application of the economic loss rule to such claims "would eliminate the availability of malpractice claims against professionals

such as architects where the damages are essentially pecuniary in nature") (quoting *Video Corp. of Am. v. Frederick Flatto Assoc., Inc.,* 85 A.D.2d 448, 451–52, 448 N.Y.S.2d 498 (1982)).

Accordingly, we approve of the district court's resolution of this issue.

III. The Calculation of Damages Proximately Flowing From the Malpractice

■ Stetson–Harza and Dunlevy also argue that even if the recovery sought by TPI is not barred by the economic loss rule, the damages award is based on profits that were never recoverable under real world conditions. TPI argues that the appellants waived this argument by making precisely the opposite contention before the jury—that their energy output estimates were always attainable. TPI points out that although Stetson–Harza and Dunlevy may now object to the jury's calculation of damages, they should have presented those arguments before the jury, not on appeal.

■ The proper measure of damages is a factual question that was properly submitted for resolution by the jury. Thus, the only issue properly before us is whether the jury's calculation of damages is sustainable. The jury heard evidence that the output predictions for the Forestport plant were possible absent the negative impact of the FERC bypass restrictions. It also heard evidence that TPI suffered substantial damages as a result of Dunlevy's and Stetson–Harza's violation of their professional duties. Under the circumstances, it is not for tortfeasors to dispute for the first time on appeal a seemingly reasonable measure of TPI's damages. *See Matter of Rothko,* 43 N.Y.2d 305, 322–23, 401 N.Y.S.2d 449, 372 N.E.2d 291 (1977); *Curiale v. Peat, Marwick, Mitchell & Co.,* 214 A.D.2d 16, 24–25, 630 N.Y.S.2d 996 (N.Y.App.Div.1995); *Cohen v. Hallmark Cards, Inc.,* 45 N.Y.2d 493, 498–99, 410 N.Y.S.2d 282, 382 N.E.2d 1145

(1978); *see also Mirand v. City of New York*, 84 N.Y.2d 44, 50–51, 614 N.Y.S.2d 372, 637 N.E.2d 263 (1994) (examining a jury verdict to assess whether it was irrational); *Rowe v. Board. of Educ. of Chatham Cent. Sch. Dist.*, 120 A.D.2d 850, 851, 502 N.Y.S.2d 294 (N.Y.App.Div.1986). It is well established that damages need not be calculated with mathematical precision. *See Matter of Rothko*, 43 N.Y.2d at 323, 401 N.Y.S.2d 449, 372 N.E.2d 291; *Gilroy v. American Broad. Co.*, 58 A.D.2d 533, 534–35, 395 N.Y.S.2d 658 (1977) (" 'Where the tort itself is of such a nature as to preclude the ascertainment of the amount of damages with certainty, it would be a perversion of fundamental principles of justice to deny all relief to the injured person. . . . [I]t will be enough if the evidence show[s] the extent of the damages as a matter of just and reasonable inference, although the result be only approximate.' ") (quoting *Story Parchment Co. v. Paterson Co.*, 282 U.S. 555, 563, 51 S.Ct. 248, 75 L.Ed. 544 (1931)). Accordingly, we find sufficient evidence to support the jury's resolution of this issue.

IV. The Dismissal of the Claims for an Accounting and the Imposition of a Constructive Trust

 HII argues that the district court incorrectly dismissed its claims for an accounting and the imposition of a constructive trust and, furthermore, failed to make the findings of fact and conclusions of law required by Rule 52 of the Federal Rules of Civil Procedure. TPI responds that (1) HII cannot raise this issue on appeal after failing to raise it in its post-trial motions; (2) the record supports the district court's decision; and (3) in any event, the standard of review is extremely high—for clear error only.

Implicit in the district court's action was its recognition that once the claims for breach of the joint venture contract failed before the jury, the accounting and constructive trust claims were pointless. The district court's failure to make formal findings of fact and conclusions of law does not inhibit our ability to review the dismissal and is therefore not error. *See Devices for Medicine, Inc. v. Boehl*, 822 F.2d 1062, 1068 (Fed.Cir.1987) ("The record fully supports each challenged exercise of the district court's discretion, [including the dismissal of certain claims based on a jury's findings as to other issues,] and it was unnecessary for the district court to have stated what is obvious to one with knowledge of the record and the law."); *Grover Hill Grain Co. v. Baughman–Oster, Inc.*, 728 F.2d 784, 792–93 (6th Cir.1984). Moreover, even if we found the district court's action insufficient under Rule 52, we could still review the dismissal to see if it could be affirmed under Rule 50 as a judgment as a matter of law. *See Burger v. New York Inst. of Tech.*, 94 F.3d 830, 835 (2d Cir.1996). Under the facts of this case, that Rule's standard has certainly been met. After the jury's verdict it was clear to all concerned that the accounting and constructive trust claims could not lie. Accordingly, we affirm the district court's rejection of HII's equitable claims and hold that it was not reversible error to do so without making formal findings of fact and law.

V. The Allegedly Improper Presentation of Evidence Regarding Dunlevy's Conflict of Interest

 Dunlevy and HII argue that the district court erred in allowing the presentation of evidence concerning Dunlevy's alleged conflict of interest between his duties as an employee of Stetson–Harza and as an owner of HII. Dunlevy and HII argue that this was not only error, but highly prejudicial error that requires vacatur of the jury verdict. Given the broad discretion afforded to a trial judge concerning the admission of evidence, *see Perry v. Ethan Allen, Inc.*, 115 F.3d 143, 150 (2d Cir.1997) ("Evidentiary rulings ordinarily will not be overturned absent an abuse of discretion.") (citations omitted), we are not persuaded that the district

court erred in deciding to admit this relevant and minimally prejudicial evidence. We also note that even if we assume *arguendo* that the district court erred in admitting this evidence, we cannot conceive how such error would be so gross as to require us to vacate the jury's verdict and the judgment. *See id.* (vacatur is only required when the admission of prejudicial evidence likely affected the outcome of the case); *In re Martin–Trigona*, 760 F.2d 1334, 1344 (2d Cir.1985) (reviewing for manifest error); *see also* Fed.R.Civ.P. 61.

## VI. TPI's Claims for Negligent Misrepresentation, Breach of Contract, and Professional Malpractice with Regard to Adams and Kayuta Lake

### A. Negligent Misrepresentation

TPI cross-appeals from the district court's grant of summary judgment to Stetson–Harza and Dunlevy on the negligent misrepresentation claim. TPI argues that the negligent misrepresentation claim is supported by facts showing that (1) Stetson–Harza and Dunlevy owed TPI a duty of care due to a "special relationship"; (2) Stetson–Harza and Dunlevy knew or should have known that their representations were false; (3) Stetson–Harza and Dunlevy knew or should have known that the cross-appellants would rely on those misrepresentations; and (4) the cross-appellants in fact relied on those misrepresentations to their detriment.

In response, Stetson–Harza and Dunlevy contend that the district court correctly concluded that "only 'misrepresentations of *present facts*' are actionable under a negligent misrepresentation theory." Stetson–Harza's Reply Br. at 24 (quoting Judge Kahn and citing *Murray v. Xerox Corp.*, 811 F.2d 118, 123 (2d Cir.1987)) (emphasis in original). They assert that the alleged negligent misrepresentations only dealt with the sites' expected output and consequently were merely promises about future events. Additionally, Dunlevy argues that the alleged misrepresentations were not negligent (*i.e.*, did not

violate a duty of care); that the cross-appellants did not rely on any representations to their detriment; and that Steckler was well aware of the questionable financial viability of Kayuta Lake and Adams, but went ahead because these plants were packaged with the plant that he really wanted, Forestport.

The district court determined that the negligent misrepresentation claim should be dismissed on summary judgment. In its analysis, the court reasoned that the alleged misrepresentations related to future events and were promissory in nature rather than factual, and that therefore these statements could not support a claim for negligent misrepresentation under New York law. In support the court cited to *U.S. West Financial Services, Inc. v. Tollman*, 786 F.Supp. 333, 344 (S.D.N.Y. 1992) and *Murray*, 811 F.2d at 118. The court concluded that "[a]ll of [the] alleged misrepresentations identified by Steckler in his opposition papers [were] promissory in nature and thus insufficient to support this theory of recovery."

The district court correctly resolved this issue. Under New York law, the elements for a negligent misrepresentation claim are that (1) the defendant had a duty, as a result of a special relationship, to give correct information; (2) the defendant made a false representation that he or she should have known was incorrect; (3) the information supplied in the representation was known by the defendant to be desired by the plaintiff for a serious purpose; (4) the plaintiff intended to rely and act upon it; and (5) the plaintiff reasonably relied on it to his or her detriment. *See King v. Crossland Savs. Bank*, 111 F.3d 251, 257–58 (2d Cir.1997) (citing *Eiseman v. State of New York*, 70 N.Y.2d 175, 187, 518 N.Y.S.2d 608, 511 N.E.2d 1128 (1987); *International Prods. Co. v. Erie R. Co.*, 244 N.Y. 331, 338, 155 N.E. 662 (1927)). However, the alleged misrepresentation must be factual in nature and not promissory or relating to future events

that might never come to fruition. *See Murray,* 811 F.2d at 123 ("Promises of future conduct are not actionable as negligent misrepresentations."); *Sheth v. New York Life Ins. Co.,* 709 N.Y.S.2d 74, 75 (N.Y.App.Div.2000) ("The purported misrepresentations relied upon by plaintiffs may not form the basis of a claim for fraudulent and/or negligent misrepresentation since they are conclusory and/or constitute mere puffery, opinions of value or future expectations.") (citations omitted); *Bango v. Naughton,* 184 A.D.2d 961, 963, 584 N.Y.S.2d 942 (N.Y.App.Div.1992) (negligent misrepresentation claim was properly dismissed for failure to state a claim because the alleged representations were "mere expressions of future expectation") (internal quotation and citation omitted); *Margrove Inc. v. Lincoln First Bank of Rochester,* 54 A.D.2d 1105, 1107, 388 N.Y.S.2d 958 (N.Y.App.Div.1976) ("The alleged negligent misstatements all relate to promised future conduct, if misstatements they be, and there is a lack of any element of misrepresentation as to an existing material fact so as to come within the doctrine of negligent misrepresentation . . . ."); *Glanzer v. Shepard,* 233 N.Y. 236, 242, 135 N.E. 275 (1922) (Cardozo, *J.*) (holding a defendant liable for a negligent misstatement of material *existing* fact).

■ In the present case, the negligent misrepresentation claim fails because the energy output predictions were mere promises of future output as opposed to present representations of existing fact.

The alleged misrepresentations identified by the district court, relating to the energy output predictions, are just the sort of representations about future events that cannot support a claim for negligent misrepresentation.[1]

■ Additionally, even if Stetson–Harza and Dunlevy made misrepresentations sufficient to support such a claim, TPI possessed adequate knowledge that the project's financial success was unlikely and in any event it should have known not to rely on the energy output estimates.[2] Steckler, the key player in TPI, had already been active in the real estate business in Canada and had even purchased a property containing a hydroelectric power plant. Moreover, Mr. Fliechter of Bay-Bank, whom Steckler consulted about financing the acquisition of these plants, warned Steckler that Adams was too remote. There is also evidence that TPI went ahead with the Kayuta Lake and Adams plants in hopes of scoring a payday with the other two plants that were bundled with these two known losers. For example, Steckler admitted that "[t]he Forestport site was the prize. . . ."

Consequently, the reliance element of this claim is lacking. *See Schlaifer Nance & Co. v. Estate of Andy Warhol,* 119 F.3d 91, 101 (2d Cir.1997) ("Generally, sophisticated businessmen's reliance on the misrepresentations of a party is *un*reasonable when the businessmen are engaged in major transactions with access to critical in-

1. *Kimmell v. Schaefer,* 89 N.Y.2d 257, 652 N.Y.S.2d 715, 675 N.E.2d 450 (1996), relied on by the cross-appellants, is inapposite. First, although *Kimmell* dealt with projections, those projections were calculated based on known and existing utility rates that the defendant applied incorrectly. Second, the projections at issue in *Kimmell* dealt with energy cogeneration plants already in existence, in contrast to our case, where the plants had not yet been built at the time of the alleged misrepresentation. Third, the issue before the Court of Appeals was whether the relationship between the defendant and plaintiff would support a negligent misrepresentation claim, not whether the alleged statements

qualified as representations of existing fact or future promises.

Fourth, although the Appellate Division in *Kimmell* found that future predictions/projections could qualify as the basis for a negligent misrepresentation claim, *see Kimmell v. Schaefer,* 224 A.D.2d 217, 218, 637 N.Y.S.2d 147 (1996), that finding is contrary to the great weight of authority. *See supra.*

2. We note that the district court was very generous to construe the amended complaint filed by TPI, Marina Development, and Steckler as encompassing a negligent misrepresentation claim.

formation and fail to take advantage of that access.") (internal quotation and brackets omitted); *Keywell Corp. v. Weinstein*, 33 F.3d 159, 164 (2d Cir.1994) (If the plaintiff "has the means of knowing, by the exercise of ordinary intelligence, the truth . . . of the representation, . . . he will not be heard to complain . . . ." (citation omitted)); *Grumman Allied Indus., Inc. v. Rohr Indus., Inc.*, 748 F.2d 729, 737–38 (2d Cir.1984) (stating that New York courts are disinclined to entertain negligent misrepresentation claims when business persons fail to take advantage of access to critical information).

Under the circumstances, we reject the negligent misrepresentation claim and affirm the district court's decision.

**B. Breach of Contract and Professional Malpractice**

■ TPI also cross-appeals from the district court's judgment as a matter of law finding no merit in the breach of contract and professional malpractice claims with respect to Adams and Kayuta Lake. However, we find TPI's argument unconvincing. TPI presented no expert evidence concerning professional malpractice at these two sites and, accordingly, the district court correctly dismissed these claims for lack of proof.[3] TPI also failed to establish a breach by Dunlevy or Stetson–Harza of any contract regarding these two plants. TPI's service contracts with Dunlevy and Stetson–Harza simply did not include a contractual guarantee that any particular site would produce a particular amount of energy. *See* J.A. 1289–90.

**VII. Prejudgment Interest**

TPI argues that the district court erred in failing to amend the judgment to award prejudgment interest. TPI argues that under New York law, it is entitled to prejudgment interest as a matter of right.

Stetson–Harza and Dunlevy both contend that prejudgment interest is inappropriate here because such an award might improperly include interest on future damages and any attempt to separate out the prejudgment interest based on when damages accrued would necessarily result in "pure speculation." Stetson–Harza Br. at 22 (internal quotation omitted).

■ TPI is correct that New York law instructs courts to award prejudgment interest as a matter of right when a defendant's "act or omission depriv[es] or otherwise interfer[es] with title to, or possession or enjoyment of, property." N.Y. C.P.L.R. § 5001(a) (McKinney 2000); *see Mallis v. Bankers Trust Co.*, 717 F.2d 683, 693–94 (2d Cir.1983); *Spector v. Mermelstein*, 485 F.2d 474, 481–82 (2d Cir.1973). While Stetson–Harza and Dunlevy properly raise concerns about an award of prejudgment interest based on future damages, *see Gordon v. Matthew Bender & Co.*, 186 F.3d 183, 186 (2d Cir.1999), we are confident that the district court will ably resolve these issues on remand. This may be done for instance by separately calculating prejudgment interest for each year that damages accrue/accrued or by calculating interest from a reasonable intermediate date. *See, e.g., Manhattan Fuel Co. v. New England Petroleum Corp.*, 439 F.Supp. 959, 971 (S.D.N.Y.1977), *aff'd* 578 F.2d 1368 (2d Cir.1978) (calculating interest per month based on when the action for damages accrued); *Falcone v. EDO Corp.*, 141 A.D.2d 498, 500, 529 N.Y.S.2d 123 (N.Y.App.Div.1988) (computing interest under § 5001(b) from a "reasonable date"). Difficulties in calculation do not warrant ignoring the mandate of the state's statute. *See Cruz v. Local Union Number 3*, 34 F.3d 1148, 1157 (2d Cir. 1994) (difficulty in calculating backpay under Title VII should not result in the denial of a reasonable estimate); *Falcone*,

---

**3.** We note that the trial court specifically asked TPI's counsel whether TPI's expert would provide any testimony regarding liability at Adams, Kayuta Lake, and Cranberry Lake. Counsel responded, "No, your Honor. And I'm not going to offer any damages proof." Tr. 1892.

141 A.D.2d at 500, 529 N.Y.S.2d 123. *See also Slicker v. Jackson*, 215 F.3d 1225, 1229–30 (11th Cir.2000) (compensatory damages for violation of constitutional rights may be awarded despite difficulty in calculating the monetary value of injury) (citing *Memphis Community Sch. Dist. v. Stachura*, 477 U.S. 299, 307, 106 S.Ct. 2537, 91 L.Ed.2d 249 (1986)).

VIII. TPI's Claims for Breach of Contract with Respect to Forestport and Ogdensburg

In light of our resolution of TPI's claim for professional malpractice with respect to these two hydroelectric power plants, we need not resolve its contentions in this portion of the cross-appeal. *See* TPI Br. at 56 n.18 ("To the extent this Court affirms TPI's damage award on its malpractice claim, this issue may be academic.").

## CONCLUSION

In accordance with the foregoing, we affirm in part and vacate and remand in part for further proceedings consistent with this opinion.